**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHARLES MURRAY, on behalf of himself and those similarly situated<br><br>            Plaintiff,<br><br>    v.<br><br>GERDAU AMERISTEEL CORP. And JOHN DOES 1-10<br><br>            Defendants | No. 3:11-cv-00647<br><br>Judge Freda L. Wolfson |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE CLASS ACTION ALLEGATIONS FROM PLAINTIFF'S
COMPLAINT**

Dated:       May 23, 2011

Counsel:     Justin L. Swidler
             Richard S. Swartz
             Joshua S. Boyette

             SWARTZ SWIDLER LLC
             1878 Marlton Pike East. Ste. 10
             Cherry Hill NJ, 08003
             (856) 685-7420

             Attorney for Plaintiff Charles Murray

# TABLE OF CONTENTS

I.    LEGAL STANDARD ........................................................................................................ 2

II.   THE COURT SHOULD NOT DISMISS THE STATE LAW CLASS ACTION CLAIMS DUE TO INHERENT INCOMPATIBILITY BETWEEN FLSA COLLECTIVE ACTIONS AND RULE 23 CLASS ACTIONS ............................................................................................................ 3

   A.  Courts within this District do not Dismiss State Law Class Allegations due to "Inherent Incompatibility" .................................................................................................... 3

   B.  Nothing in Text or Legislative History Suggests that Congress Intended to Bar Hybrid Actions .. 5

      1)  Plain Language of the Text Anticipates State Law Wage and Hour Claims, Including Class Actions ............................................................................................................. 5

      2)  The Legislative History of FLSA and Rule 23 does not Establish that Congress Intended to Prevent Plaintiffs from Bringing Dual Certified Actions .......................................... 8

III.  THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICITON OVER PLAINTIFF'S CLASS ACTION CLAIMS ............................................................................................. 9

   A.  NJWHL Class Action Claims are Part of the Same Case or Controversy s Plaintiff's FLSA Claim .......................................................................................................................... 10

   B.  Plaintiff's NJWHL Class Action Claims do not Raise Novel or Complex Issues of State Law, do not Predominate over the Federal Claims, and there are no other Compelling Reasons for Declining Jurisdiction .......................................................................................... 11

      1)  Plaintiff's NJWHL Class Action Claims do not Substantially Predominate over Plaintiff's FLSA Collective Action Claims ....................................................................... 12

      2)  There are no other Exceptional Circumstances to Decline Jurisdiction over Plaintiff's NJWHL Class Action Claims ............................................................................... 15

   C.  This Court Should Exercise Supplemental Jurisdiction due to the Issues of Judicial Economy, Convenience, Fairness, and Comity .................................................................... 17

   D.  The Recent Trend in this District and Nationwide is to allow Dual-Certified Actions to Proceed 18

IV.  PUTATIVE CLASS MEMBERS WILL BE ABLE TO MEET THE REQUIREMENTS OF RULE 23 AND SUCH ANALYSIS IS PREMATURE ...................................................... 20

   A.  Plaintiff's Pleadings Establish that the Potential Class Meets Rule 23(A) Numerosity Requirement because the Class is Sufficiently Numerous and Class Treatment will Result in Substantial Savings of Judicial Resources .................................................. 21

   B.  Plaintiff's Pleadings Establish that a Class Action is Superior to Other Available Methods to the Fair and Efficient Adjudication of The Controversy ............................................. 22

V.   THIS COURT HAS ORIGINAL JURISDICTION OVER PLAINTIFF'S NJWHL CLAIMS UNDER CLASS ACTION FAIRNESS ACT ................................................................. 23

# TABLE OF AUTHORITIES

## Cases

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001)...........................................17

*Barabin v. Aramark Corp.,* 2003 U.S. App. LEXIS 3532 (3d Cir. Jan. 24, 2003)...................................22

*Barnes v. American Tobacco Co.*, 161 F.3d 127 (3d Cir. Pa. 1998) ......................................................22

*Barnello v. AGC Chemicals Americas, Inc.*, 2009 U.S. Dist. LEXIS 6410 (D.N.J. Jan. 29, 2009) ...........15

*Cannon v. Vineland Hous. Auth.,* 627 F. Supp. 2d 171 (D.N.J. 2008) ...................................................13

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (U.S. 1988)..................................................................17

*Cortez v. Neb. Beef, Ltd.*, 266 F.R.D. 275 (D. Neb. 2010) ....................................................................20

*Damassia, et al. v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008)..........................................6, 20

*Dare v. Comcast Corp.*, 2010 U.S. Dist. LEXIS 62498 (D.N.J. June 23, 2010)....................3, 5, 9, 18, 19

*De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003) .......................................................passim

*DiNardo v. Ned Stevens Gutter Cleaning & Installation, Inc.,* 2008 U.S. Dist. LEXIS 14946 (D.N.J. Feb. 28, 2008)....................................................................................................................................4, 19

*Ehrhart v. Synthes (USA)*, 2007 U.S. Dist. LEXIS 94760 (D.N.J. Dec. 21, 2007) ..............................2, 20

*Ervin v. OS Rest. Servs.,* 632 F.3d 971 (7th Cir. 2011) ............................................................9, 14, 15, 19

*Evancho v. Sanofi-Aventis U.S. Inc.*, 2007 U.S. Dist. LEXIS 93215 (D.N.J. Dec. 18, 2007) ..................18

*Exxon Mobil Corp. v. Allapattah Services Inc.*, 545 U.S. 546 (2005)...............................................10, 11

*Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031 (8th Cir. 1999)......................................................10

*Flynn v. Stonegate Mortg. Corp.*, 2010 U.S. Dist. LEXIS 90878 (D. Kan. Aug. 30, 2010)....................19

*Freeman v. Hoffmann-Laroche, Inc.*, 2007 U.S. Dist. LEXIS 92589 (D.N.J. Dec. 14, 2007)..............5, 19

*Gross v. FBL Fin. Servs.*, 129 S. Ct. 2343 (2009)...................................................................................5

*Herring v. Hewitt Associates Inc.*, 2006 U.S. Dist. LEXIS 56189 (D.N.J. Aug. 11, 2006).......................4

*Himmelman v. Continental Casualty Co.*, 2006 U.S. Dist. LEXIS 56187 (D.N.J. Aug. 11, 2006) ......4, 18

*Hyman v. WM Fin. Servs.*, 2007 U.S. Dist. LEXIS 41433 (D.N.J. June 7, 2007)................................5, 18

*In re School Asbestos Litigation*, 977 F.2d 796 ..................................................................................22

*Jackson v. Alpharma Inc.*, 2008 U.S. Dist. LEXIS 12787 (D.N.J. Feb. 21, 2008) .............................4, 24

*Kach v. Hose*, 589 F.3d 626 (3d Cir. 2009) .........................................................................................17

*Lang v. DirecTV, Inc.*, 735 F. Supp. 2d 421 (E.D. La. 2010) ................................................................19

*Lehman v. Legg Mason, Inc.*, 532 F. Supp. 2d 726 (M.D. Pa. 2007) ......................................................6

*Lenahan v. Sears, Roebuck & Co.*, 2006 U.S. Dist. LEXIS 60307 (D.N.J. July 10, 2006)......................19

*Lindsay v. Gov't Emples. Ins. Co.*, 448 F.3d 416 (D.C. Cir. 2006). ..........................................9, 14, 16, 19

*Lum v. Bank of America*, 361 F.3d 217 (3d Cir. 2004)...........................................................................2

*Mathis v. Camden County*, 2009 U.S. Dist. LEXIS 113045 (D.N.J. Dec. 3, 2009) ..................................15

*McCormick v. Festiva Dev. Group*, LLC, 2010 U.S. Dist. LEXIS 14856 (D. Me. Feb. 11, 2010)............19

*McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 2010 U.S. Dist. LEXIS 119792 (E.D.N.C. 2010) ....20

*Moeck v. Gray Supply Corp.,* 2006 U.S. Dist. LEXIS 511 (D.N.J. Jan. 5, 2006)....................................18

*Perry v. Freedom Mortg. Corp.*, 2009 U.S. Dist. LEXIS 46108 (D.N.J. June 1, 2009)........................4, 19

*Perry v. Freedom Mortg. Corp.*, 2009 U.S. Dist. LEXIS 64530 (D.N.J. July 27, 2009) ..................16, 19

*S. Broward Hosp. Dist. v. MedQuist, Inc.*, 516 F. Supp. 2d 370 (D.N.J. 2007).......................................2

*Sherhill v. Cellco P'ship*, 2008 U.S. Dist. LEXIS 91477 (E.D. Pa. Apr. 7, 2008)..........................4, 16, 23

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. Pa. 2001) .........................................................................21

*United Mine Workers v. Gibbs*. 383 U.S. 715 (1966)................................................................10, 12, 17

*Wang v. Chinese Daily News, Inc.*, 623 F.3d 743 (9th Cir. 2010) ...................................................9, 14, 19

*Weisfeld v. Sun Chem. Corp.*, 84 Fed. Appx. 257 (3d Cir. 2004) ............................................................ 22

*Westerfield v. Wash. Mut. Bank*, 2007 U.S. Dist. LEXIS 54830 (E.D.N.Y. July 26, 2007)...................... 4

*White v. Rick Bus Company*, 743 F. Supp. 2d 380 (D.N.J. 2010) ............................................................ 5

**Statutes**

28 U.S.C. § 1367 ............................................................................................................................ 10

28 U.S.C. § 1367(a)........................................................................................................................ 15

28 U.S.C. § 1367(c)..............................................................................................................11, 12, 15

Fair Labor Standards Act

      29 U.S.C. § 201 <u>et</u> <u>seq.</u>.

      29 U.S.C. § 216(b) ...................................................................................................... 6

      29 U.S.C. § 218(a) ...................................................................................................... 7

Fair Labor Standards Act of 1938,

      Ch. 676, § 16(b), 52 Stat. 1060, 1069 (1938) ........................................................... 8

**Other Authorities**

5C Wright, Miller & Kane, Federal Practice & Procedure Civil (3d ed.) ................................................... 2

93 Cong. Rec. 2182 (1947)................................................................................................................ 8

Marc Linder, <u>Class Struggle at the Door: The Origins of the Portal-to-Portal Act of 1947</u>, 39 Buff. L. Rev.

      53 (1991)............................................................................................................... 8

**Rules**

Fed. R. Civ. P. 12 ........................................................................................................................... 1

Fed. R. Civ. P. 23 ................................................................................................................... passim

New Jersey Rule of Court 4:32-1 ....................................................................................................... 7

Plaintiff Charles Murray (hereinafter "Plaintiff"), by and through his undersigned counsel, hereby oppose Defendant's partial Motion to Dismiss.

## INTRODUCTION

Plaintiff filed a collective and class action complaint against his former employer, Gerdau Ameristeel Corp. ("Gerdau" or "Defendant") and John Does 1-10 on February 4, 2011. His complaint alleged violations of both the Fair Labor Standards Act ("FLSA") and the New Jersey Wage and Hour Law ("NJWHL"). Defendant has now moved to dismiss the class action claims from Plaintiff's Complaint on three primary grounds: first, Defendant claims that the maintenance of a state law wage and hour class action is "inherently incompatible" with a FLSA collective action due to the different consent procedures involved in each action; second, Defendant claims that similarly, this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law class action claims because of said inherent incompatibility; and third, Defendant claims that the mechanisms provided by the FLSA collective action support a finding that Plaintiff will be unable, at the class certification stage, to support the requirements of Rule 23(b)(3) that joinder is impracticable and that a class action is not a superior means of resolving the class' claims.

Each one of Defendant's arguments is, at its essence, an argument that the procedural differences between a FLSA collective action (which requires an opt-in by class members before they are joined to the action) and a Rule 23 class action for the state law claims (which requires only notice and an opportunity to opt-out of the action) prevents a federal court from certifying both types of claims in a single action. Nothing in the text or history of FLSA supports such a conclusion, and to the extent Defendant appeals to this Court's discretion to decline to exercise supplemental jurisdiction, there exist important reasons to deny Defendant's request.

1

This Court should deny Defendant's motion because, first, "inherent incompatibility" is not a valid reason to dismiss state law claims and Defendant provides no legal doctrine for doing so; second, because exercising supplemental jurisdiction over Plaintiff's and the putative class members' state law claims does not require the resolution of novel or complex issues of state law and does not require significantly broadening the scope of the action in terms of remedies and scope of proof; and third, because the determination of whether the putative class meets the requirements of Rule 23 is premature since Plaintiff has not had a chance to take class discovery.

**<u>LEGAL ARGUMENT</u>**

## I.     LEGAL STANDARD

It is well settled that when considering a Rule 12(b)(6) motion to dismiss, the Court must "accept as true all of the factual allegations in the complaint and draw all reasonable inferences from those facts in favor of the plaintiffs." *Lum v. Bank of America*, 361 F.3d 217, 223 (3d Cir. 2004).  Additionally, class action allegations should only be dismissed in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met. *Ehrhart v. Synthes (USA)*, 2007 U.S. Dist. LEXIS 94760, *12 (D.N.J. Dec. 21, 2007).  As a practical matter, the Court's certification decision should be predicated on more information than the complaint itself affords, and discovery related to the issue whether a class action is appropriate needs to be undertaken before deciding whether to allow the action to proceed on a class basis. *Id*. at * 13 (quoting 5C Wright, Miller & Kane, Federal Practice & Procedure Civil 3d § 1785.3); *see also S. Broward Hosp. Dist. v. MedQuist, Inc.*, 516 F. Supp. 2d 370, 402 (D.N.J. 2007).

II.     **THE COURT SHOULD NOT DISMISS THE STATE LAW CLASS ACTION CLAIMS DUE TO CLAIMED INHERENT INCOMPATIBILITY BETWEEN FLSA COLLECTIVE ACTIONS AND RULE 23 CLASS ACTIONS**

Defendant's primary argument in its motion to dismiss is that a NJWHL class action is inherently incompatible with a FLSA collective action due to the procedural differences between Rule 23(b)(3)'s opt-out consent mechanism and FLSA's opt-in consent mechanism.  However, no court within this district has held that "inherent incompatibility" is a permissible reason to dismiss a class action allegation predicated on state law.  Defendant has not argued that the FLSA preempts either the NJWHL or Rule 23, nor is there any basis to claim as such.  Thus, to the extent that Defendant seeks to dismiss these claims solely on the basis of a so-called "inherent incompatibility" between the FLSA and either Rule 23 or the NJWHL, this Court should deny Defendant's motion.

This Court should further deny Defendant's motion to the extent it is predicated on inherent incompatibility because nothing in the text or legislative history of FLSA indicates that the statute was intended to bar state law wage and hour class actions from proceeding in the same or in separate actions.

A.  **Courts within this District do not Dismiss State Law Class Allegations due to "Inherent Incompatibility"**

Defendant argues that this Court should dismiss Plaintiff's state law claims due to an asserted "inherent incompatibility" between the procedural requirements of a FLSA collective action and a NJWHL class action certified under Rule 23.  Though some courts within this district have referred to this alleged procedural incompatibility, no court has held that "inherent incompatibility," standing alone, is a doctrinally-sound reason to dismiss state wage and hour class allegations.  *See Dare v. Comcast Corp.*, No. 09-4175 (NLH), 2010 U.S. Dist. LEXIS 62498 at *4 (D.N.J. June 23, 2010) (noting that though two District of New Jersey Courts have

3

used language of inherent incompatibility, the dismissals in both cases were predicated upon declining to exercise supplemental jurisdiction); *see also Perry v. Freedom Mortg. Corp.*, No. 09-856 (RMB), 2009 U.S. Dist. LEXIS 46108 (D.N.J. June 1, 2009) ("dismissal of a cause of action under NJWL solely for inherent incompatibility with FLSA *is not appropriate*"); *DiNardo v. Ned Stevens Gutter Cleaning & Installation, Inc.,* No. 07-5529 (SRC), 2008 U.S. Dist. LEXIS 14946 (D.N.J. Feb. 28, 2008) (denying motion to dismiss because Defendant relied solely on "inherent incompatibility" argument); *Jackson v. Alpharma Inc.*, 2008 U.S. Dist. LEXIS 12787 (D.N.J. Feb. 21, 2008) (holding that "inherent incompatibility" is only relevant as part of supplemental jurisdiction analysis).[1]

Similarly, courts within the Eastern District of Pennsylvania have also rejected the argument that a state wage law class action is inherently incompatible with a FLSA collective action. *See, e.g., Sherhill v. Cellco P'ship*, 2008 U.S. Dist. LEXIS 91477, 3-5 (E.D. Pa. Apr. 7, 2008) ("'[t]here is no legal doctrine, of which this Court is aware, that permits the Court to dismiss a cause of action solely on the grounds that it is 'inherently incompatible' with another action before it"). Other courts have reached the same conclusion. *See, e.g., Westerfield v. Wash. Mut. Bank*, 2007 U.S. Dist. LEXIS 54830 (E.D.N.Y. July 26, 2007) ("[cases] which cite only to the theory of inherent incompatibility are simply wrongly decided under an imaginary legal doctrine").

Rather, and as the Third Circuit has explained, the decision to permit an opt-in collective action to proceed alongside an opt-out class action must be decided through a case-specific

---

[1] Of the cases cited by Defendant, only two, *Herring v. Hewitt Associates Inc.*, No. 06-267 (GEB), 2006 U.S. Dist. LEXIS 56189 (D.N.J. Aug. 11, 2006), and *Himmelman v. Continental Casualty Co.*, No. 06-166 (GEB), 2006 U.S. Dist. LEXIS 56187 (D.N.J. Aug. 11. 2006), use the language "inherent incompatibility" in dismissing state claims. However, in *Jackson v. Alpharma Inc.*, Chief Judge Brown clarified that though the issue had not been explicitly addressed in his unpublished opinions, *Herring* and *Himmelman* had been decided under a supplemental jurisdiction analysis since the state claims were only before the court pursuant to supplemental jurisdiction. 2008 U.S. Dist. LEXIS 12787 at *12, fn. 3 (D.N.J. Feb. 21, 2008).

supplemental jurisdiction analysis. *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 312 (3d Cir. 2003); *see also White v. Rick Bus Company* No. 09-5408 (FLW), 743 F. Supp. 2d 380 (D.N.J. 2010) ("*De Asencio* directs courts faced with the prospect of dual certification … to determine, on a case-by-case basis, whether to exercise supplemental jurisdiction"); *Freeman v. Hoffmann-Laroche, Inc*., 2007 U.S. Dist. LEXIS 92589 *7-*9 (D.N.J. Dec. 14, 2007); *Hyman v. WM Fin. Servs.*, 2007 U.S. Dist. LEXIS 41433 (D.N.J. June 7, 2007).  Furthermore, because this case-specific analysis requires "examining the scope of state and federal issues, the terms of proof required for each claim, the comprehensiveness of the remedies and the ability to dismiss the state claims without prejudice," *De Asencio*, 342 F.3d at 312, this analysis can only be conducted "after the parties have completed substantial discovery, the opt-in procedure is completed, and the plaintiffs move for class certification of their state claims." *Dare v. Comcast Corp.*, No. 09-4175 (NLH), 2010 U.S. Dist. LEXIS 62498 (D.N.J. June 23, 2010).

     **B.  Nothing in Text or Legislative History Suggests that Congress Intended to Bar Hybrid Actions**

     This Court should further deny Defendant's motion because nothing in the text of FLSA or its legislative history indicates an intent to preempt or preclude a plaintiff from bringing a state law claim in the same action and then proceeding with that state claim on a class action basis.

     **1)  Plain Language of the Text of the FLSA Anticipates State Law Wage and Hour Claims, Including Class Actions**

     Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose. *Gross v. FBL Fin. Servs.*, 129 S. Ct. 2343, 2350 (2009).  The express language of Section 216(b) limits the opt-in requirement to "such actions" brought to vindicate rights under

FLSA; it says nothing as to state actions.  In contrast, the express language of Section 218(a) of FLSA makes clear that the FLSA does not preempt state laws that provide more generous provisions.

Under Section 216(b), a plaintiff may bring a collective action on behalf of similarly situated employees to vindicate rights established by the FLSA so long as each employee seeking to be a plaintiff in that action files a written consent with the court.  29 U.S.C. § 216(b).

Section 216(b) states in part:

> Any employer who violates the provisions of section 6 or section 7 of this Act [29 USCS § 206 or 207] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 15(a)(3) of this Act [29 USCS § 215(a)(3)] shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 15(a)(3) [29 USCS § 215(a)(3)], including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. **An action to recover the liability prescribed in either of the preceding sentences** may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction **by any one or more employees for and in behalf of himself or themselves and other employees similarly situated**. No employee shall be a party plaintiff to **any such action** unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.* (emphasis added).  Thus, the express language of 216(b) makes clear that the collective action mechanism only applies to "such action[s]" raising a violation of Sections 206, 207, or 215(a)(3) of the FLSA.  *See, e.g., Damassia, et al. v. Duane Reade, Inc.*, 250 F.R.D. 152, 162 n.5 (S.D.N.Y. 2008) (the word "action" only applies to actions to redress wage claims under the FLSA).  Thus, in enacting section 216(b), Congress did nothing to restrict state law in any manner.  *See Lehman v. Legg Mason, Inc.*, 532 F. Supp. 2d 726, 731 (M.D. Pa. 2007) ("Congress acted only with respect to <u>federal</u> claims and did not preempt or limit the remedies available

6

through state law … **nothing in the plain text of the FLSA reflects Congressional intent to limit the substantive remedies available … under state law, nor to limit the procedural mechanism by which such a remedy may be pursued**") (emphasis added).

In fact, the FLSA explicitly endorsed the continued exercise by the states of their broad police powers to improve the welfare of their citizens through Section 218(a).  *See id.* ("The intent of 218(a) is to leave undisturbed the traditional exercise of the states' police with respect to wages and hours more generous than the federal standard").

Section 218(a) states that:

No provision of this Act or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this Act or a maximum workweek lower than the maximum workweek established under this Act …

29 U.S.C. § 218(a). Thus, the plain language and structure of the FLSA contemplates state wage and hour claims more generous than the FLSA proceeding and in tandem with a FLSA action.

New Jersey enacted the NJWHL in 1966.  In so doing, it adopted much of the structure of the FLSA. However, it specifically did **not** adopt the opt-in consent requirement of 216(b). Instead, a class action under the NJWHL filed in state court would proceed pursuant to New Jersey Rule of Court 4:32-1, which permits class actions for the recovery of damages pursuant to an opt-out procedure.  If filed in federal court pursuant to supplemental jurisdiction, diversity jurisdiction, or CAFA jurisdiction, it would proceed under Rule 23.  Thus, the State of New Jersey provides a potentially more *generous* procedural mechanism for class action suits under NJWHL.  The language and intent of the FLSA supports the proposition that Plaintiff and the putative class members should be able to bring a NJWHL class action, and join it to the FLSA collection action.

7

2)   **The Legislative History of the FLSA and Rule 23 does Not Establish that Congress Intended to Prevent Plaintiffs from Bringing Dual Certified Actions**

Defendant's further argument that Congress intended to prevent dual-certified actions is not supported by the actual legislative history of Section 216(b) and FRCP 23. Defendant erroneously implies that the Portal-to-Portal Act was enacted to ban opt-out class actions such as those certified under Rule 23(b)(3). This assertion mischaracterizes the actual history of the enactment; the Portal-to-Portal Act, and Section 216(b)'s opt-in consent requirement, were enacted to prevent lawsuits brought by individuals with **no claims of their own** on behalf of others.

When the FLSA was first enacted in 1938, it permitted employees to "designate an agent or representative to maintain such action for and on behalf of all employees similarly situated." Ch. 676, § 16(b), 52 Stat. 1060, 1069 (1938); *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1983). Under this provision, employees could designate a third party, such as a union representative, with no claim of his own against a defendant, to bring a suit against the defendant on behalf of all similarly situated employees.

It was these types of third party actions, which Senator Donnell referred to in the Congressional Record as "representative actions" as opposed to "collective actions" or "class actions," which the Portal-to-Portal Act repealed and to which Senator Donnell was referring in the statement cited by Defendant. *See* 93 Cong. Rec. 2182 (1947). Notably, Senator Donnell could not have been referring to opt-out actions under Rule 23 because Rule 23 did not allow class members to join an action through an opt-out procedure until 1966. *See* Marc Linder, <u>Class Struggle at the Door: The Origins of the Portal-to-Portal Act of 1947</u>, 39 Buff. L. Rev. 53, 174-75 (1991). Thus, because there were no procedural differences between the FLSA and the

Federal Rules at the time the Portal-to-Portal Act was enacted, Congress could not have intended to preclude dual actions on the basis of procedural differences that did not develop until 1966.

In reliance in part on this correct history of the respective provisions, and the fact that the plain language of the FLSA renders a resort to legislative history unnecessary, three recent Circuit Courts of Appeal have held that the maintenance of a Rule 23 state law class action is **not** inherently incompatible with the maintenance of a FLSA collective action in the same lawsuit. *See Ervin v. OS Rest. Servs.,* 632 F.3d 971, 973 (7th Cir. 2011) ("This action was designed to eliminate lawsuits initiated by third parties (typically union leaders) on behalf of a disinterested employee"); *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 761 (9th Cir. 2010); *Lindsay v. Gov't Emples. Ins. Co.*, 448 F.3d 416, 418 (D.C. Cir. 2006).  These decisions accord with those in this district that have held that there is nothing inherently incompatible about the maintenance of a dual-certified action.  *See, e.g., Dare*, 2010 U.S. Dist. LEXIS 62498 at *4 (D.N.J. June 23, 2010).

Based on the foregoing reasons, this Court should deny Defendant's motion to dismiss due to asserted "inherent incompatibility."

## III.    THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICITON OVER PLAINTIFF'S CLASS ACTION CLAIMS

Defendant argues in the alternative that this Court should decline to exercise supplemental jurisdiction over the state law class action claims.  This Court should deny Defendant's motion to dismiss on this basis because conducting this supplemental jurisdiction analysis is premature and should be postponed until after Plaintiff has had a chance to take class discovery and move for class certification.  This Court should also deny Defendant's motion because Plaintiff's state law claims do not raise novel or complex issues of state law, do not

substantially predominate over federal claims, and there are no other sufficiently compelling reasons for declining supplemental jurisdiction.

Under the supplemental jurisdiction statute, federal courts are instructed to exercise supplemental jurisdiction over state law claims that share a common nucleus of operative fact with the federal claims such that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367.  However, the supplemental jurisdiction statute also permits a court to decline to exercise supplemental jurisdiction in certain enumerated or exceptional circumstances first outlined in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).  Those circumstances are not present in this action.

### A. NJWHL Class Action Claims are Part of the Same Case or Controversy as Plaintiff's FLSA Claim

Defendant first argues that the state law class members' claims do not form part of the same case or controversy as the FLSA action because they do not have their own individual basis of federal jurisdiction.  Defendant cites a number of out-dated and out-of-circuit cases for this proposition.  *See* Defendants' Brief at 7 (citing, e.g., *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031 (8th Cir. 1999), and two district court cases from the Second Circuit decided prior to 2005).  In 2005, the Supreme Court explicitly rejected this narrow interpretation of the supplemental jurisdiction statute.  *Exxon Mobil Corp. v. Allapattah Services Inc.*, 545 U.S. 546, 560-61 (2005).  In *Exxon,* the Supreme Court held that once a court has original jurisdiction over a case or controversy, supplemental jurisdiction will reach all related claims, even those that do not have an independent basis of federal jurisdiction.  *Id.*

Similarly, the Third Circuit Court of Appeals has explicitly stated that state wage and hour claims arise out of the same case or controversy as federal wage and hour claims.  "Where

the same acts violate parallel federal and state laws, the common nucleus of operative facts is obvious." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 308 (3d Cir. 2003).

Thus, Defendant's argument that the claims of the state law class members are not part of the same case or controversy is clearly erroneous and specifically foreclosed by the Supreme Court's decision in *Exxon* and the Third Circuit's statement in *De Asencio*.  Because the failure to pay overtime wages to the potential class members was part of Defendant's uniform policy and practice, all of the claims alleged in Plaintiff's complaint arise from a common nucleus of operative fact, and the NJWHL class action claims fall squarely within the supplemental jurisdiction of this Court.

### B.   Plaintiff's NJWHL Class Action Claims do Not Raise Novel or Complex Issues of State Law, do Not Predominate over the Federal Claims, and there are No other Compelling Reasons for Declining Jurisdiction

Since the NJWHL class action claims are part of the same case or controversy as the FLSA collective action claims, and the FLSA does not expressly preempt or preclude supplemental jurisdiction, the only basis for a court to dismiss Plaintiff's state law class action allegations is under the Court's discretionary authority pursuant to 28 U.S.C. § 1367(c).  *Exxon*, 545 U.S. at 559.  Under this provision, a court may (but need not) decline to exercise jurisdiction when: 1) the claim raises a novel or complex issue of state law; 2) the claim substantially predominates over the claim or claims over which the court has original jurisdiction; 3) the court has dismissed all claims over which it has original jurisdiction; or 4) in exceptional circumstances, when there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367(c)(1)-(4).

Defendant has argued that this Court should decline supplemental jurisdiction because the state claims substantially predominate over the federal claims and because this is an

exceptional circumstance in which compelling reasons exist for declining jurisdiction.  This Court should reject these contentions.

### 1)  Plaintiff's NJWHL Class Action Claims do Not Substantially Predominate over Plaintiff's FLSA Collective Action Claims

Under a supplemental jurisdiction analysis, if state issues "substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals."  *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); 28 U.S.C. § 1367(c)(3).  Unlike in *De Asencio*, an analysis of the factors here strongly suggest retaining jurisdiction over Plaintiff's NJWHL class action claims.

In *De Asencio v. Tyson Foods, Inc.*, the Third Circuit declined to exercise supplemental jurisdiction over a plaintiff's class action claims under the Pennsylvania Wage Payment and Collection Law ("PWPCL") in conjunction with a FLSA collective action, holding that the state law claims substantially predominated over the FLSA claims because they involved novel and complex issues of state law, different terms of proof, different and more comprehensive remedies, and because the number of state class members who had failed to opt-out greatly exceeded the number of FLSA class members who had opted in.  342 F.3d 301, 306 (3d. Cir. 2003).  *De Asencio* also counseled that the decision to decline to exercise supplemental jurisdiction was necessarily a fact intensive question to be decided on a case-by-case basis.  *Id.* at 312.

In *De Asencio,* the Third Circuit was primarily concerned with the differences in proof between the FLSA and the PWPCL.  *Id.* at 309 ("Our inquiry here centers on the terms of proof and the scope of the issues raised in the FLSA and WPCL actions").  However, unlike the FLSA and the NJWHL, both of which create a right to compensation, the PWPCL only provides a

statutory remedy for an employer's breach of contract. *Id.* Thus, in order to establish violations of the PWPCL, the existence and terms of a contract needed to be proven. *Id.* Additionally, the court in *De Asencio* was faced with resolving a matter of first impression under the PWPCL, namely whether the statute extended to implied contracts. *Id.* at 309-310.

 In contrast to the state claims in *De Asencio*, the instant matter will not require the resolution of novel or complex issues of state law that diverge from the standards of proof needed to establish violations under the FLSA. The NJWHL is modeled on the FLSA and incorporates, both explicitly and through judicial interpretation, the FLSA's methods of proof and interpretation. *See Cannon v. Vineland Hous. Auth.,* 627 F. Supp. 2d 171, 176 n.4 (D.N.J. 2008) (noting that the FLSA and NJWHL use the same test for overtime claims). Unlike in *De Asencio*, where the court held that the novel questions of law and fact would render the federal claim a mere appendage to "the more comprehensive state action," in the instant matter, federal statutory law and interpretations will predominate over the analogous NJWHL. *See* 342 F.3d at 309 n. 13.

 While *De Asencio* did note that the different sizes of the classes played a role in the decision to decline supplemental jurisdiction, this conclusion was influenced at least in part by the understanding that the difference in class size would exacerbate the other factors already discussed, *i.e.*, the differences in proofs and remedies. *Id.* at 310 ("As we analyze the different levels of proof required and the relevant federal and state interests, the disparity in numbers here gives us pause").

 Where the different levels of proof are not substantially different (as is the situation here), and the matter does not involve novel issues of New Jersey law (as is the situation here), the concerns about disparity in class size raised by the *De Asencio* court in declining to exercise

supplemental jurisdiction are significantly mitigated. *See id.* at 312 (noting that bringing state law class action in same case as a FLSA claim "may be proper strategy where the state and federal actions raise similar issues and require similar terms of proof"); *see also Ervin v. OS Rest. Servs.*, 632 F.3d 971, 980 (7th Cir. 2011) ("As long as the claims are similar between state plaintiffs and the federal action, it makes no real difference whether the numbers vary"); *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 761 (9th Cir. 2010) (state claims do not predominate where they are closely related to the FLSA claims); *Lindsay v. Gov't Emples. Ins. Co.*, 448 F.3d 416, 425 (D.C. Cir. 2006) ("[where] state claims essentially replicate the FLSA claims – they plainly do not predominate").

*Lindsay*, decided by the D.C. Circuit Court of Appeals, discussed the issue of supplemental jurisdiction in dual certified actions extensively and its rationale is persuasive here. First, *Lindsay* noted that while the defendants focused considerably on Congress' intent in enacting the Portal-to-Portal Act, defendants glossed over congressional intent in enacting the supplemental jurisdiction statute. 448 F.3d at 424. "Congress conferred a broad grant of jurisdiction upon the district courts, indicating a congressional desire that 'supplemental jurisdiction,' at least in the first instance . . . go to the constitutional limit." *Id. Lindsay* then held that the similarity between the federal and state claims warranted exercising supplemental jurisdiction over the state claims. *Id.*

Similarly, in *Wang*, the Ninth Circuit held that it was not an abuse of a district court's discretion to exercise supplemental jurisdiction over a state wage class action brought pendent to a FLSA collective action. 623 F.3d at 761-762. *Wang* distinguished *De Asencio* on the grounds that the state wage allegations did not pose novel questions of state law akin to those present in *De Asencio. See id.*

In *Ervin*, the Seventh Circuit followed *Lindsay* and *Wang* and held that where the state law claims generally replicate the FLSA, the state claims will not predominate. 632 F.3d at 980. In terms of differences between class sizes, the court noted that the supplemental jurisdiction statute explicitly calls for the inclusion of additional parties.  "Section 1367(a) expressly states that '[s]uch supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties' … inclusion of additional litigants as unnamed members of a class is of no more jurisdictional significance than joinder or intervention." *Id.* (quoting 28 U.S.C. § 1367(a)).

Unlike in *De Asencio*, in the instant case, the only reason to find that the state claims would predominate over the federal claims is because of the state law class may be larger than the FLSA class.  And as discussed above, this Court should not find that a mere disparity in size is sufficient alone to constitute substantial predominance.  Therefore, this Court should deny Defendant's motion to dismiss on this basis.[2]

### 2)   There are No other Exceptional Circumstances to Decline Jurisdiction over Plaintiff's NJWHL Class Action Claims

Defendant also suggests that the Court should decline supplemental jurisdiction due to the existence of exceptional circumstances, pursuant to 28 U.S.C. § 1367(c)(4). When adjudicating whether "other compelling reasons" counsel against supplemental jurisdiction, a court must evaluate "economy, convenience, fairness, and comity." *Mathis v. Camden County*, 2009 U.S. Dist. LEXIS 113045, *28 (D.N.J. Dec. 3, 2009).

It is true that some courts in this district have declined to hear state law claims under this provision.  *See, e.g., Barnello v. AGC Chemicals Americas, Inc.*, 2009 U.S. Dist. LEXIS 6410 (D.N.J. Jan. 29, 2009); *but see Perry v. Freedom Mortg. Corp.*, 2009 U.S. Dist. LEXIS 64530

---

[2] Plaintiff also notes that in *De Asencio*, the different sizes of the two classes were known with certainty.  Here, declining to exercise supplemental jurisdiction at the pleadings stage before the parties have any sense of the actual relative sizes of the two classes would be, needless to say, premature.

(D.N.J. July 27, 2009) (declining to follow *Barnello*).  However, in *De Asencio*, the Third Circuit specifically declined to characterize concerns about the tension between the opt-in and opt-out procedures of the two class mechanisms as an exceptional circumstance that would allow a court to decline jurisdiction under subsection 4.  *See* 342 F.3d at 309.  Further, in *Lindsay*, the D.C. Circuit specifically held that the procedural differences between the two mechanisms could **not** constitute a compelling reason to decline to exercise supplemental jurisdiction.  *See* 448 F.3d at 425 ("[the court] may not, however, use subsection (c)(4) to conclude that section 216(b)'s opt-in procedure ousts the court of supplemental jurisdiction over the state law class of those claimants who have not joined the FLSA claim").

Defendant cites no case law and makes no argument why the instant circumstances constitute exceptional circumstances except that the action will involve two different classes of plaintiffs:  "With separate classes of plaintiffs, the Court will have to address multiple permutations of claims for numerous groups."  (Def. Brief at 10).  However, Defendant makes no argument as to why this Court would be ill-equipped to manage an action in which there were two classes with similar, though not identical, claims and defenses.  While it is true that some individuals may be members of both classes, courts routinely manage cases with many subclasses, and would not be overburdened in managing a case with only two.  Furthermore, any case manageability concerns are properly deferred to the class certification stage.  *See, e.g., Sherhill v. Cellco P'ship,* 2008 U.S. Dist. LEXIS 91477 *4-*5 (E.D. Pa. Apr. 7, 2008).

As explained below, hearing all of these cases in a single proceeding will significantly advance the values of economy, convenience, fairness, and comity, since hearing all claims will result in a significant savings of judicial resources and will respect the State of New Jersey's

decision to permit opt-out class actions in suits under its wage and hour laws.  For this reason, the Court should deny Defendant's motion to dismiss on this basis.

### C.  This Court Should Exercise Supplemental Jurisdiction due to the Issues of Judicial Economy, Convenience, Fairness, and Comity

While a court has discretion to decline to exercise supplemental jurisdiction under 1367(c), that discretion should be based on considerations of judicial economy, convenience, and fairness to the parties.  *See Kach v. Hose,* 589 F.3d 626, 650 (3d Cir. 2009); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity") (*citing United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)). A weighing of these considerations supports an exercise of supplemental jurisdiction in this case.

Should this Court dismiss Plaintiff's state law class allegations, Plaintiff will likely file a separate class action in either state or federal court pursuant to CAFA or diversity jurisdiction. This separate action will result in a significant duplication of time and effort, resulting in significant and unnecessary use of judicial resources.  *See, e.g., Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001) ("these common questions are best litigated in a single forum and separate actions would be wasteful and inefficient").  Thus, the principle of judicial economy favors exercising supplemental jurisdiction over Plaintiff's claims.  Likewise, it will be more convenient for all parties, including the members of the state law class, to have their claims adjudicated in the same action as the FLSA collective action.  Should Plaintiff not file a state law class action, the courts could be faced with the prospect of hundreds of individual suits litigating what is the same constitutional case and controversy.  Thus, these two principles strongly favor this Court exercising supplemental jurisdiction over the state law claims.

Similarly, the value of fairness and comity suggests that this Court should exercise supplemental jurisdiction.  Declining to exercise supplemental jurisdiction over New Jersey Wage and Hour Claims disregards New Jersey's interest in allowing its workers to vindicate violations of New Jersey law through a class action in a convenient and efficient forum of their choice.  Declining jurisdiction defeats the principal of comity and federalism in which federal courts are competent to hear and adjudicate state laws and state courts are competent to hear and adjudicate federal laws.  The inevitable practical result of Defendant's motion is that the plaintiffs will be less likely to attempt to vindicate their rights under the New Jersey law.  Such a result is contradictory to the principle of federalism and to the express intent of the FLSA to set a floor to workplace regulation, and not a ceiling.

### D.  Moreover, the Recent Trend in this District and Nationwide is to Allow Dual-Certified Actions to Proceed

Following *De Asencio*'s mandate that the decision to decline supplemental jurisdiction over pendent state law claims is a case-by-case analysis, courts in this district have divided on exercising jurisdiction over such claims.  While a number of courts have declined jurisdiction over state law claims, s*ee, e.g., Moeck v. Gray Supply Corp.,* No. 03-1950 (WGB), 2006 U.S. Dist. LEXIS 511 (D.N.J. Jan. 5, 2006); *Himmelman v. Cont'l Cas. Co.*, No. 06-166 (GEB), 2006 U.S. Dist. LEXIS 56187 (D.N.J. Aug. 11, 2006); *Evancho v. Sanofi-Aventis U.S. Inc.*, No. 07-2266 (MLC), 2007 U.S. Dist. LEXIS 93215 (D.N.J. Dec. 18, 2007); *Hyman v. WM Fin. Servs.*, No. 06-4038 (WJM), 2007 U.S. Dist. LEXIS 41433 (D.N.J. June 7, 2007), **the recent trend within this district** has been to allow dual actions to proceed, or postpone such decisions to the class certification or summary judgment stage.  *See Dare v. Comcast Corp.*, No. 09-4175 (NLH), 2010 U.S. Dist. LEXIS 62498 (D.N.J. June 23, 2010) (postponing supplemental jurisdiction analysis to class certification stage); *Perry v. Freedom Mortg. Corp.*, No. 09-856 (RMB), 2009

U.S. Dist. LEXIS 46108 (D.N.J. June 1, 2009); *DiNardo v. Ned Stevens Gutter Cleaning &*

*Installation, Inc.*, No. 07-5529 (SRC), 2008 U.S. Dist. LEXIS 14946 (D.N.J. Feb. 28, 2008);

*Freeman v. Hoffmann-Laroche, Inc.*, No. 07-1503 (JLL), 2007 U.S. Dist. LEXIS 92589 (D.N.J.

Dec. 14, 2007) (postponing supplemental jurisdiction analysis to class certification stage);

*Lenahan v. Sears, Roebuck & Co.*, No. 02-0045 (SRC), 2006 U.S. Dist. LEXIS 60307, 19-20

(D.N.J. July 10, 2006) (approving a settlement class of both the FLSA and NJWHL class

claims).

 In *Dare,* after holding that inherent incompatibility was not a sufficient reason to dismiss

the state law class allegations, Judge Hillman held that a supplemental jurisdiction analysis could

only be conducted "after the parties have completed substantial discovery, the opt-in procedure is

completed, and the plaintiffs move for class certification of their state claims."  2010 U.S. Dist.

LEXIS 62498 at *8-*9.  Likewise, in *Freeman*, Judge Linares declined to engage in a

supplemental jurisdiction analysis before the parties had engaged in discovery.  2007 U.S. Dist.

LEXIS 92589 at *11.

 Similarly, the recent national trend also supports the maintenance of dual certified

actions.  The Courts of Appeal for the D.C., Seventh, and Ninth Circuits have all recently held

that such suits can be maintained.  *See Ervin v. OS Rest. Servs.,* 632 F.3d 971, 973 (7th Cir.

2011); *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 761 (9th Cir. 2010); *Lindsay v. Gov't*

*Emples. Ins. Co.*, 448 F.3d 416, 418 (D.C. Cir. 2006).  Districts courts in six other circuits also

routinely allow dual-certified actions to proceed in a single suit.  *See, e.g., McCormick v. Festiva*

*Dev. Group*, LLC, 2010 U.S. Dist. LEXIS 14856 (D. Me. Feb. 11, 2010); *Flynn v. Stonegate*

*Mortg. Corp.*, 2010 U.S. Dist. LEXIS 90878 (D. Kan. Aug. 30, 2010); *Lang v. DirecTV, Inc.*,

735 F. Supp. 2d 421, 429 (E.D. La. 2010); *McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465,

2010 U.S. Dist. LEXIS 119792 (E.D.N.C. 2010); *Cortez v. Neb. Beef, Ltd.*, 266 F.R.D. 275, 287 (D. Neb. 2010); *Perkins v. Southern New Eng. Tel. Co.*, 2009 U.S. Dist. LEXIS 10625 (D. Conn. Feb. 11, 2009); *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 161 (S.D.N.Y. 2008).

Thus, because Plaintiff's NJWHL class action claims are part of the same case or controversy as his FLSA claims, and because the NJWHL claims do not substantially predominate over his federal claims, and because the values of economy, convenience, fairness, and comity support exercising supplemental jurisdiction over these claims, this Court should follow the recent trend in this district and elsewhere in allowing such dual-certified actions to proceed, and deny Defendant's motion.

## IV.    PUTATIVE CLASS MEMBERS WILL BE ABLE TO MEET THE REQUIREMENTS OF RULE 23 AND SUCH ANALYSIS IS PREMATURE

Defendant's last argument repackages its previous two, and argues that the procedural differences between the FLSA and Rule 23 means that Plaintiff will not be able to meet the requirements of Rule 23 at the class certification stage for this NJWHL claims.  This argument also fails.

As noted at the outset, dismissing class action allegations before class certification and an opportunity to take class discovery is a **rare occurrence**, only appropriate when the complaint on its face demonstrates that the requirements of class certification cannot be met.  *Ehrhart v. Synthes (USA)*, 2007 U.S. Dist. LEXIS 94760, *12 (D.N.J. Dec. 21, 2007).  The better course is to deny such a motion.  *Id.* at *13.

In its motion, Defendant argues that it meets this stringent standard because Plaintiff will not be able to establish that joinder is impracticable and because the NJWHL class action will not meet the superiority test of Rule 23(b)(3).  The Court should reject this argument for two reasons.  First, this argument is premature.  Plaintiff has not yet had the opportunity to gather,

20

assess, and present evidence establishing that joinder is, in fact, impracticable or that a class action would be the superior mechanism for hearing these claims.  This can only be accomplished with discovery.   Second, Plaintiff has met its pleading burdens of showing that the class is so numerous that joinder is impracticable and that a class action is a superior method for adjudicating this controversy.  *See* Complaint at ¶ 21, 25.

### A.   Plaintiff's Pleadings Establish that the Potential Class Meets Rule 23(A) Numerosity Requirement because the Class is Sufficiently Numerous and Class Treatment will Result in Substantial Savings of Judicial Resources

Though there is no threshold number of class members that automatically satisfies the numerosity requirement, the numerosity prong is generally satisfied if the potential number of plaintiffs exceeds forty.  *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001) ("if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met").  Accepting as true the factual allegations in Plaintiff's Complaint, the potential class in this case numbers, at least, in the 100s.  This is enough to survive Defendant's instant motion and provide Plaintiff the opportunity to take class discovery.

Defendant nevertheless argues that joinder is not impracticable because of the opportunity potential class members will have to join the litigation through the potential FLSA collective action.  Defendant's first argument is simply its incompatibility argument discussed above,  repackaged.  Defendant argues that because potential class members may join this case through the FLSA collective action, there would be no judicial economy in allowing a class action to proceed and those who opt-in to the FLSA can easily join their state law claims.  This argument leaves out those individuals who do not opt-in to the FLSA collective action, the individuals whose rights are at the heart of this motion.  In examining whether to certify a class, this Court will need to focus on those individuals, and determine whether joinder is practicable

21

for them. While this determination cannot be made until the actual class is determined, it is likely that there will be at least a substantial number of class members who will not opt-in to the FLSA collective action.  Joinder will be impractical for these individuals, and a failure to certify the class may well lead to multiple and duplicative actions that waste judicial resources.

Based on the foregoing, this Court should not dismiss Plaintiff's class action allegations at the pleadings stage based on Defendant's unsupported argument that there would be no judicial economy in allowing a class action to proceed.

### B.  Plaintiff's Pleadings Establish that a Class Action is Superior to Other Available Methods to the Fair and Efficient Adjudication of the Controversy

Plaintiff's pleadings also establish that a class action would be a superior method of efficiently adjudicating the instant controversy.  The superiority requirement is closely related to Rule 23's predominance requirement (which Defendant does not challenge in the instant motion).  *See Weisfeld v. Sun Chem. Corp.*, 84 Fed. Appx. 257, 263 (3d Cir. 2004) ("[the superiority] requirement is closely related to the predominance requirement").  These requirements typically turn on whether class members' claims would turn upon individualized factual evaluations.  *See Barabin v. Aramark Corp.*, 2003 U.S. App. LEXIS 3532 (3d Cir. Jan. 24, 2003); *see, e.g., Barnes v. American Tobacco Co.*, 161 F.3d 127, 131 (3d Cir. 1998) (noting that individual factual determinations made class action litigation unmanageable); *In re School Asbestos Litigation*, 977 F.2d 764, 796 (3d Cir. 1992) (expressing concerns that differences between state laws prevented common issues from predominating).  Because Defendant has not argued that class members claims will require individualized evaluations, and because whether class members were denied overtime wages will depend on a common determination of whether Defendant miscalculated class members' base and overtime rate, this Court should deny Defendant's motion for this reason as well.

22

Defendant's additional argument that litigation involving dual certification would be unmanageable should be similarly disregarded.  Courts routinely certify multiple sub-classes.  In the instant case, Plaintiff is aware of only two potential sub-classes.  Thus, to the extent that class notice is complicated by having multiple sub-classes, Defendant fails to explain how such notice is more complicated than notice in other multiple-claim complex litigation, *e.g.*, notice in a FLSA collective action joined with a Rule 23 Title VII action.

Moreover, to the extent that a dual certification action notice is more complicated than a typical Rule 23(b)(3) class action notice, this added complexity may be addressed by clear organization and careful wording explaining the different procedural requirements.  *See, e.g., Sherhill v. Cellco P'ship,* 2008 U.S. Dist. LEXIS 91477 (E.D. Pa. Apr. 7, 2008) ("Not only is this argument premature at this early stage in the litigation, prior to certification, but any potential confusion in  the class notice can be overcome by careful wording and thoughtful organization").

## V.    THIS COURT HAS ORIGINAL JURISDICTION OVER PLAINTIFF'S NJWHL CLAIMS UNDER THE CLASS ACTION FAIRNESS ACT

Finally, even should this Court somehow decline to exercise supplemental jurisdiction over Plaintiff's NJWHL class action allegations, this Court likely possesses original jurisdiction over Plaintiff's NJWHL claims under the Class Action Fairness Act of 2005 ("CAFA").

CAFA grants federal courts original jurisdiction over class actions in which there are 100 or more class members, the amount in controversy (when aggregating the claims of each class member) exceeds $5,000,000, and any member of the class is a citizen of a State different from any defendant.

Though the Complaint alleges a class size of at least several dozen, informal investigation has revealed that the actual potential class size is several hundred individuals. Given that each

individual's damages have been calculated to average at least $40,000 and in many cases

substantially more, the amount in controversy also meets CAFA's $5,000,000 threshold.  Since

Defendant's United States operations are headquartered in Florida and most class members will

be citizens of New Jersey or one of its neighboring states, this Court will very likely possess

original jurisdiction under CAFA.

In *Jackson v. Alpharma*, Chief Judge Brown held that where federal courts have

independent original jurisdiction over state law class action claims, it would be **inappropriate** to

dismiss those claims from a FLSA collective action.  2008 U.S. Dist. LEXIS 12787 at *16

(D.N.J. Feb. 21, 2008).  Thus, even if this Court should decline to exercise supplemental

jurisdiction over Plaintiff's class action claims, this Court should allow Plaintiff to amend his

pleadings to allege this independent basis of jurisdiction.

## CONCLUSION

Based on the foregoing reasons, this Court should deny Defendant's motion to dismiss.


Respectfully Submitted,


/s Joshua S. Boyette

**SWARTZ SWIDLER LLC**

Joshua S. Boyette, Esq.


24