## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

CHARLES MURRAY, *et al.*, *on behalf of themselves and all those similarly situated*

Plaintiffs,

v.

GERDAU AMERISTEEL CORP,

Defendants.

CASE NO. 11-647

## MEMORANDUM OF LAW IN SUPPORT OF THE PLAINTIFFS' MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS SETTLEMENT

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION .......................................................................................................4

LEGAL ARGUMENT ..................................................................................................5

    I.    Final Approval is Appropriate.........................................................................5

    II.    The Court should give final approval to the class settlement. ...........................................6

    III.    The Court should award the requested attorney's fees and costs. ..................................9

        A.    Size of the Fund and Number of Persons Benefitted ..................................................12

        B.    No objections to class counsel's fee request..........................................................14

        C.    Skill and Efficiency of Class Counsel ...................................................................14

        D.    Hours Worked and Risk of Non-Payment ...............................................................16

        E.    Awards in Similar Cases..............................................................................16

        F.    Lodestar Cross-check ...................................................................................17

    IV.    This Court should award the requested service payments for Named Plaintiffs. ...........18

CONCLUSION.....................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980)............................................................11

*Bredbenner v. Liberty Travel, Inc.* 2011 U.S. Dist. LEXIS 38663 at *52-53 (D. NJ. 2011)...........
...................................................................................................................................... 11, 18, 20

*Brumley v. Camin Cargo Control, Inc.* 2012 U.S. Dist. LEXIS 40599 (D. NJ. 2012)..................6

*Chemi v. Champion Mortgage*, 2009 U.S. Dist. LEXIS 44860.............................................11,13

*Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566, 575 (9th Cir. 2004)..............................5

*Deitz v. Budget Renovations & Roofing, Inc.* 2013 U.S. Dist. LEXIS 75005 (M.D. Pa. 2013)......6

*Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 179 (3d Cir.  2012) ..............................6

*Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 592-93 (D. NJ. 2010)...........................18, 20

*Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-595 (3d Cir. 2010)...........................................5

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)................................................................5, 6, 7

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000)...............................................12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988) ..................................................5

*In re Am. Inv. Life Ins. Co. Annuity Mktg. & Sales Practice Litig.*, 263 F.R.D. 226, 245 (E.D. Pa. 2009)......................................................................................................................................20

*In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006).....................................................11, 12, 17

*In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001) ........................................ 12, 13, 16

*In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 323 (D.N.J. 1998) ......................................15

*In re Elec. Carbon*, 447 F. Supp. 2d 389, 412 (D. NJ. 2006).....................................................20

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995)...........
......................................................................................................................................8, 12, 16

*In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D.Pa.2000).......................15

*In re Janney*, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. 2009) ...............................................11, 13

*In re Prudential Ins. Co. America Sales Practice Litig. Agent*, 148 F.3d 283, 333 (3d Cir. 1998) ...................................................................................................................... 11, 17

*In re Remeron End-Payor Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27011 at *32-*33 (D.N.J. Sept. 13, 2005) ................................................................................................ 20

*In re Rite Aid*, 396 F.3d 294, 306 (3d. Cir. 2005) ..................................................... 17

*In re Safety Components, Inc. Sec. Litig.*, 166 F Supp. 2d 72, 102 (D.N.J. 2001) ...................... 17

*In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990)................. 16

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ................................... 5

*Inmates of the Northumberland County Prison v. Reish*, 2011 U.S. Dist. LEXIS 46600 (M.D. Pa. 2011)................................................................................................................. 8

*Lenahan v. Sears, Roebuck & Co.*, 2006 U.S. Dist. LEXIS 60307 (D. NJ. 2006) ...................... 11

*Lenahan v. Sears, Roebuck and Co.*, 266 Fed. Appx. 114, 120 (3d Cir. 2008) ........................... 6

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998)....................... 5

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ........................... 5

*Ripley v. Sunoco, Inc.*, 287 F.R.D. 300 (E.D. Pa. 2012) ............................................................ 8

*Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979)................................................ 5

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990)........................................... 8

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)................................ 5

**Treatises**

Newberg On Class Actions (4th ed. 2002) ............................................................................. 5, 20

## INTRODUCTION

On May 3rd, 2013, following 2.5 years of litigation and "many, many months" of settlement discussions and mediations, and after a full briefing on the issue and oral argument regarding same, this Court gave preliminary approval to the pending class and collective action settlement. (Transcript of Hearing on [416] Motion to Certify Class and Settlement Filed by Plaintiffs at p.2, *attached hereto* as "Exhibit A"). Pursuant to the agreement reached in March and preliminarily approved on May 3rd, Gerdau will pay $3.075 million plus FICA costs to settle all claims in this action. The settlement resolves all claims brought in this action, including allegations that Gerdau failed to pay overtime in violation of the Fair Labor Standards Act ("FLSA") and allegations that Gerdau failed to pay for compensable time and overtime in violation of the New Jersey Wage and Hour Law and the New Jersey Wage Payment and Collection Law.[1]

At the time this Court gave preliminary approval, it explicitly addressed the *Girsh* factors which must guide this Court regarding whether final approval is now appropriate. Accordingly, Class Counsel will use this brief to update the Court regarding the reaction of the class now that notice has been disseminated and the opt-out and objection period has closed. Additionally, Class Counsel will use this brief to petition for their previously disclosed attorney's fees and costs, and will further petition for the previously disclosed service payments to Named Plaintiffs.

---

[1] As discussed in the initial motion for preliminary approval, this settlement does not compensate employees who worked for Gerdau MacSteel in Jackson, Michigan. Those employees worked for a separate legal entity and were inappropriately joined in the instant action. All these class members have been withdrawn from the instant proceeding, and have since refiled their claims against Gerdau MacSteel in the Eastern District of Michigan, which remains pending. *See Saterlee, et al. v. Gerdau Macsteel, et al.* (E.D. Mich. 2013) (Docket No. 2:13-cv-12376). Importantly, these individuals have not waived any claims by virtue of the settlement in this matter.

## LEGAL ARGUMENT

**I.      Final Approval is Appropriate.**

The law favors compromise and settlement of collective and class action suits. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-595 (3d Cir. 2010); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."); *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation."); *see also* NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The approval of a proposed class action settlement is a matter of discretion for the trial court. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566, 575 (9th Cir. 2004); *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998). In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

## II.     The Court should give final approval to the class settlement.

The Third Circuit reviews nine factors when determining the fairness of a class settlement, the so-called *Girsh* factors:

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of  establishing damages;

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 179 (3d Cir.  2012); *see also Lenahan v. Sears, Roebuck and Co.*, 266 Fed. Appx. 114, 120 (3d Cir. 2008) (applying *Girsh* factors to determine if settlement of hybrid Rule 23/FLSA claims was reasonable); *Deitz v. Budget Renovations & Roofing, Inc.* 2013 U.S. Dist. LEXIS 75005 (M.D. Pa. 2013) (applying *Girsh* factors to determine reasonableness of FLSA settlement); *Brumley v. Camin Cargo Control, Inc.* 2012 U.S. Dist. LEXIS 40599 (D. NJ. 2012) (applying *Girsh* factors to determine reasonableness of FLSA settlement and noting that other courts in this circuit have done the same).

Here, the Parties have already briefed this Court regarding the *Girsh* factors with respect to this settlement in their Brief in Support of their Motion for Preliminary Settlement Approval, and this Court has already reviewed the factors appropriate to the approval of the class settlement, "including those factors as set forth in *Girsh v. Jepson*." (Exhibit A at 18). Accordingly, Class Counsel will not re-brief such issues here, and will instead incorporate those arguments into the instant filing. However, the second *Girsh* factor, the reaction to the settlement by the settlement class, could not be briefed fully at the time of the previous filing because legal notice had not yet been disseminated to the class regarding the settlement. Now that such notice has been fully provided, Class Counsel can reassure this Court that the reaction has been extremely positive, and that this factor clearly weighs in favor of approving the settlement.

Notice was sent to all 835 class members by Kurtzman Carson Cosultants LLC ("KCC"), the neutral third party class administrator in this matter. (Declaration of Stefanie Gardella, attached hereto as "Exhibit E"). In preparing the notice, Class Counsel went through pain-staking efforts which are seldom, if ever, engaged upon by attorneys in such matters to ensure that class members understood exactly what each would receive if this Court granted final approval of the settlement. Rather than provide an abstract formula which would have made it nearly impossible for class members to understand the amount each would receive, settlement allocations were calculated for class members *prior* to sending the notice, and the notice sent to each class member provided the specific amount each class member would receive in the settlement.[2] Accordingly, each class member who received the notice was fully cognizant of the amount he or she would receive if this Court gives final approval. These efforts provided a "tremendous

---

[2] In fact, class members will receive even more than they were informed as the final revised numbers provide more money to each class member.

benefit" to the class and provide further assurance that the reaction to the class settlement was the result of the class desiring to settle and not a result of a misunderstanding. (Exhibit A at 19). The reaction of the class speaks volumes as to the desire of class members to settle under the terms of the agreement which was preliminarily approved in May.

In determining the reaction of the class "courts looks to the number and vociferousness of the objectors." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995). Of 835 class members, only one individual objected to the settlement. (Exhibit E at ¶15). Only three requested to opt out of the class. (*Id.* at ¶14). Put another way, the opt-out rate was 0.3%, and after their exclusion, 99.9% of class members who will settle claims under the proposed agreement have assented to the settlement terms. Such a reaction strongly supports approval here. *See, e.g. Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (noting that second factor "strongly favor[ed]" settlement where "only twenty-nine" "of 281 class members" objected to the settlement's terms); *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300 (E.D. Pa. 2012) (finding second *Girsh* factor weighed in favor of approving settlement when one objection was filed and 3 opt-outs received in a class of 441 members); *Inmates of the Northumberland County Prison v. Reish*, 2011 U.S. Dist. LEXIS 46600 (M.D. Pa. 2011) (finding second *Girsh* factor weighed in favor of settlement where court received 4 objections in a class of 200 members).

Accordingly, with this updated information, it is clear that the second *Girsh* factor heavily weighs towards granting final settlement approval in this matter. For these reasons and the reasons as briefed in the Parties' initial joint motion, it is requested that this Court grant final approval to the class settlement.

### III.    The Court should award the requested attorney's fees and costs.

Class Counsel in this case took this matter on a pure contingency and agreed to receive nothing in this matter – including waiving recoupment of all costs – if the class did not obtain a recovery in this matter.   All opt-in plaintiffs signed representation agreements with Class Counsel agreeing that Class Counsel should receive a fee of 1/3 of any amount received in this matter, after recoupment of all costs. (*See* Blank Representation Agreement provided to class members, *attached hereto* as "Exhibit B").

For the last 2.5 years, Class Counsel has litigated this matter without any compensation. Swartz Swidler, LLC has spent over 2,000 hours pursuing this matter.  Richard Swartz and Justin Swidler personally traveled throughout the country – on multiple occasions – to meet with class members to discuss the status of the case, to participate in mediation, to obtain discovery, and to conduct time studies on premises.

Discovery in this matter was extremely time consuming, but was ultimately necessary for this case to come to resolution.  Class Counsel served hundreds of discovery requests (with specific requests made to each separate facility in which class members worked) and received and reviewed tens of thousands of records in response to same.  Additionally, on-site time studies were performed by Class Counsel at three separate facilities located all across the Eastern United States (in Georgia, North Carolina, and New Jersey).  In responding to Defendants' requests (which were served upon every class member), Class Counsel provided responses to over 10,000 interrogatory and document requests.  The time required of this case was so overwhelming that an additional attorney was hired to assist in discovery efforts and who for many months spent *all* of his time litigating only this matter.

Class Counsel further undertook extraordinary efforts to provide updated information to all class members throughout this litigation. Included in these efforts was the creative use of technology which even a few years ago would have been unimaginable, and without such use, would have likely rendered the instant matter impossible to litigate. Class Counsel created and maintained a password protected portion of their website (available at http://classactions.swartz-legal.com) for plaintiffs in this matter. Each plaintiff was provided his or her own account to the site. The site was (and remains) updated regularly to inform class members of their obligations in the case and to provide class members information regarding court deadlines, motions, settlement discussions, and other important information regarding the case.

Class Counsel's use of technology permitted Class Counsel to answer discovery as to each class member in an extremely effective and efficient manner. For example, to answer discovery, Class Counsel converted the discovery requested propounded by Defendants into an online submission system which class members could provide responses to over the password protected site.[3] While these responses needed to be reviewed and finalized by counsel, obtaining the factual information required in this fashion was likely the only possible solution in ensuring that all class members participated in discovery and were not dismissed from this case. Technology also assisted in the role of settlement; even before the preliminary motion for settlement approval was provided to this Court, an online survey created by Class Counsel on the password protected site provided that the overwhelming majority of class members preferred to settle the case for the terms as provided than to continue to litigate this matter.

---

[3] One class member chose not to use this online system and instead provided original answers in his own handwriting. This class member was Joseph Straszheim, which is why his responses, submitted in response to his objection to the settlement, are different than what is explained here. He is the *only* class member to have submitted responses in this manner.

The use of such technology allowed Class Counsel, even in a class of this size, to remain in contact with a majority of class members. Class members were encouraged to call Class Counsel regarding any issue in the case, and Justin Swidler generally personally responded to such inquiries. Such interaction created a sense of trust which should be the foundation of any attorney-client relationship, but which is generally missing in class action cases involving hundreds of class members. Yet this sense of trust directly led to the class overwhelmingly supporting the settlement – because class members knew at all times that Class Counsel had their best interests at stake and were extremely knowledgeable of the facts and law in the instant matter.

The attorney's fees and costs in this matter are requested as a percentage of the class recovery, which is the favored method for calculating attorney's fees in such cases. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980); *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006); *In re Prudential Ins. Co. America Sales Practice Litig. Agent*, 148 F.3d 283, 333 (3d Cir. 1998); *Court Awarded Attorney Fees, Report of Third Circuit Task Force*, 108 F.R.D. 237 (1985); *Bredbenner v. Liberty Travel, Inc.* 2011 U.S. Dist. LEXIS 38663 at *52-53 (D. NJ. 2011) (common fund distribution for attorney's fees in hybrid FLSA/Rule 23 wage and hour case). The percentage-of-recovery method "is the prevailing methodology used by courts in this Circuit for wage-and-hour cases." *Bredbenner*, 2011 U.S. Dist. LEXIS at *53, *citing, In re Janney*, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. 2009); *Chemi v. Champion Mortg.*, 2009 U.S. Dist. LEXIS 44860, (D.N.J. 2009); *Lenahan v. Sears, Roebuck & Co.*, 2006 U.S. Dist. LEXIS 60307 (D. NJ. 2006).

Even in cases where statutory attorney's fees attach, such as the FLSA, the percentage-of-recovery doctrine is still the preferred manner to calculate attorney's fees. The lodestar

method, whereby the attorney's time is multiplied by the reasonable hourly rate, remains *disfavored* because "regardless [of] how a total settlement structure is formally structured . . . every dollar given to class counsel means one less dollar for the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001); *see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 821-822 (rejecting lodestar fee and directing that percentage-of-recovery should have been utilized even though the agreement for fees was ostensibly distinct from the agreement to pay class members because of "economic reality" of such arrangement).

Our Court of Appeals has set forth the standards by which to measure and evaluate the reasonableness of proposed counsel fees. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000). Those factors include: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *See Gunter*, 223 F.3d 190, 195 n.1.; *see also In re AT&T Corp.*, 455 F.3d 160, 166 (3d Cir. 2006) (noting that courts should also consider any other factors that are "useful and relevant" under the facts of each case) (citations omitted). "Each case is different, however, and in some circumstances one single factor may outweigh the rest." *Bredbenner,* 2011 U.S. Dist. LEXIS 38663 at *54. In addition to the *Gunter* factors, the Third Circuit has suggested that courts "cross-check" its fee calculation against the lodestar award method. *Gunter. Id.*

## A.  Size of the Fund and Number of Persons Benefitted

Percentage rewards vary between 19%-45% of the fund, and the court should reduce the percentage as the total settlement amount increases when the reason for the increase is not

because of efforts taken by counsel, but instead simply because the size of the class has increased. *In re Cendant Corp.*, 243 F.3d at 736; *Bredbenner,* 2011 U.S. Dist. LEXIS at *54-56. Smaller percentages are reserved for large settlements, typically $100 million or higher, which may involve hundreds of thousands, if not millions of class members, and where class counsel did not incur substantial additional efforts by the inclusion of such persons. *See In re Cendant Corp.*, 243 F.3d at 736.

The settlement in the instant matter provides payment to 832 class members. The total settlement provides for payment of $3,075,000 to be paid to class members. In addition, Defendants have agreed to pay employer-side FICA taxes directly, rather than take same of out the settlement fund. This averages $3,695.91 (plus FICA payments) per class member. This is a substantial recovery for class members. *See Bredbenner*, 2011 U.S. Dist. LEXIS 38663 at *54-56 (finding $3 million "substantial" for wage and hour case with over 1,000 class members); *In re Janney*, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. 2009); ($2.9 million for 1,310 class members); *Chemi v. Champion Mortgage*, 2009 U.S. Dist. LEXIS 44860 ($1.2 million for 917 class members) (D. NJ. 2009).

Moreover, the instant matter is far from the concerning situation the Third Circuit discussed in *Cendant Corp.* where class counsel sought to receive a relatively high percentage of a more than $300,000,000 settlement fund even though the fund's size was mostly based on the number of absent class members to whom class counsel had not spoken or met, and the claims of whom did not require additional time or effort of class counsel in litigating. Here, Class Counsel has spent a tremendous amount of time and effort litigating each individual class member's claim. As discussed earlier, the efforts of Class Counsel increased with each additional plaintiff because discovery was conducted on an individual basis and required each class member to

respond to interrogatories and document requests.  Additionally, the damage model, while based on a uniform formula, required each member to be paid according to his or her individual damages, and for this reason, required research into each class member's claim.  Finally, Class Counsel took extensive efforts in finding class members and maintaining a legitimate attorney-client relationship with each class member, efforts which are rarely engaged upon by attorneys representing a class.

Accordingly, not only does the settlement provide a substantial benefit to over 830 steel workers, but the percentage requested is especially reasonable in light of the substantial efforts of Class Counsel in obtaining the ultimate result.

### B.  No objections to class counsel's fee request.

The notice sent to class members informed them that Class Counsel would seek a fee award of 30% of the settlement.  Additionally, and as noted above, all opt-in plaintiffs had previously agreed in writing to provided Swartz Swidler, LLC with 33 1/3% of any recovery, after recoupment of costs.  (Exhibit B). While there was a single objection to the settlement (which has been discussed under separate briefing), no person objected to the proposed attorney's fees and costs in this matter.  Hence, this factor weighs in favor of approving the fee application. *Bredbenner*, 2011 U.S. Dist. LEXIS 38663 at *56.

### C.  Skill and Efficiency of Class Counsel

The skill and efficiency of Class Counsel is "measured by 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *In re Ikon Office Solutions, Inc. Sec.*

14

*Litig.*, 194 F.R.D. 166, 194 (E.D.Pa.2000) *quoting In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 323 (D.N.J. 1998).

Here, as discussed *supra* and as discussed in the original briefing for preliminary approval, the difficulties faced in this case were large. The case involves unpaid overtime claims of 832 individuals who work or worked at Gerdau in 11 separate facilities stretching across the entire United States. The law regarding the compensability of donning and doffing continues to develop, and it is plagued with sub-issues such as whether the time is *de minimus*, whether the donning and doffing is integral to the work performed, whether the employees are permitted to bring personal protective equipment home, whether the employees are exposed to chemicals or other substances at work that make it dangerous to bring personal protective equipment home, whether the employees are exposed to metallic dust at work that render their bringing personal protective equipment home unlikely (not only because of the mess associated with same, but because the employer will clean the equipment without cost to the employee), whether the employees in fact bring personal protective equipment home notwithstanding a policy permitting same, whether Gerdau maintains and cleans the PPE for employees who do not bring the PPE home, among other concerns.

Class Counsel handled these difficulties in the most effective and efficient manner possible. In just over two years, Class Counsel managed to take an individual claim arising out of Sayreville, New Jersey and transform same into a multi-million dollar settlement wherein more than 830 workers will receive compensation. As discussed *supra*, Class Counsel handled the discovery obligations of their clients by making creative use of cutting edge technology. Class counsel used their extensive experience in wage and hour litigation, as well as their

relatively high level of knowledge with technology, to obtain a very positive result for the class. Hence, this factor weighs in favor of the proposed fee award.

### D.  Hours Worked and Risk of Non-Payment

In determining the risk of non-payment, courts consider the risk of establishing liability. *In re Cendant Corp.,* 232 F. Supp. 2d at 339.  Additionally, while Class Counsel could not find case law providing same, it seems evident form the test employed by the Third Circuit that this Court should further consider the risk that the class becomes decertified, as such would result in a far lesser recovery and accordingly, far less attorney's fees.

Here, as discussed above, this case poses a number of factual and legal issues which could have created risks as to liability and as to the class becoming decertified. Accordingly, Class Counsel took substantial risk in litigating this matter.

Despite these risks, and as provided by the attached declarations and attorney time log, as of the date of this filing, Swartz Swidler, LLC dedicated 2,014.2 hours of time litigating the instant matter.  Specifically, Justin Swidler dedicated 1,032 hours; Richard Swartz dedicated 367.7 hours; Daniel Horowitz dedicated 492.1 hours, and Joshua Boyette dedicated 75.2 hours working on this matter.  Additionally, 47.2 hours of paralegal time were billed.[4]

### E.  Awards in Similar Cases

The requested award is consistent and is in fact *lower* than awards provided in similar cases.  In common fund cases, fee awards generally range anywhere from nineteen percent (19%) to forty-five percent (45%) of the settlement fund. *See In re Gen. Motors*, 55 F.3d at 822, *citing In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990).  Here,

---

[4] Swartz Swidler, LLC did not require paralegals to document their time to the same extent as counsel, and as a result, there are hundreds of non-documented paralegal hours which Swartz Swidler, LLC provided.  Regardless, because records do not exist to support such time, only the hours which were recorded have been used in this application.

Class Counsel has requested a fee of 30%, inclusive of costs, totaling $922,500. This is the lower-end of what is routinely provided in such cases. *See, e.g. Bredbenner*, 2011 U.S. Dist. LEXIS at *60-61 (awarding 32.6% of $3 million, or $978,000, *plus costs,* in wage and hour case where counsel spent 1,800 hours litigating claim, and citing to cases providing same); *In re Safety Components, Inc. Sec. Litig.*, 166 F Supp. 2d 72, 102 (D.N.J. 2001) (granting award of 33 1/3 % in common fund case and citing to ten cases from this Circuit holding the same).

Accordingly, the requested fee is well in line with other fee awards in this Circuit, and accordingly, this factor also weighs in favor of providing the requested fee award.

### F.  Lodestar Cross-check

Finally, the requested fee is also supported by the Lodestar cross-check. The cross-check is performed by calculating the "lodestar multiplier." *In re AT&T Corp.*, 455 F.3d at 164. The multiplier is determined by dividing the requested fee award, determined from the percentage-of-recovery method, by the lodestar. *Id.* This figure represents "the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *See In re Rite Aid*, 396 F.3d 294, 306 (3d. Cir. 2005) (*citing Task Force Report*, 108 F.R.D. at 243). The Third Circuit has recognized that multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 238, 341 (3d Cir. 1998). However, the Court may consider reducing the percentage-of-recovery award when the multiplier is too high. *See In re Rite Aid*, 396 F.3d at 306. In determining the lodestar for cross-check purposes, the Court need not engage in a "full-blown lodestar inquiry," *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 169 n.6 (3d Cir. 2006), or "mathematical precision," *In re Rite Aid Corp.*, 396 F.3d at 306-07. A court need not involve itself with "a review of actual [attorney] time sheets." *Dewey v. Volkswagen of Am.*, 728 F.

Supp. 2d 546, 592-93 (D. NJ. 2010). Indeed, where, there have been no objections to the requested fee, "a full-blown lodestar analysis is an unnecessary and inefficient use of judicial resources." *Id.*

Here, the total lodestar fee request, without accounting for the risk of non-payment, is: $750,443.00 (based upon 2,014.2 hours expended). (*See* Declaration of Justin Swidler, with attached Attorney Time Records, *attached hereto as* "Exhibit C," and Declaration from Ari Karpf attesting to the reasonableness of the rates requested, *attached hereto* as "Exhibit D"). The fee requested accordingly is well within the lodestar cross-check multiplier, as the cross-check produces a multiplier of just 1.23, well below 4, which is "frequently" awarded. Hence, this cross-check verifies that the fee requested is reasonable for the work performed.

For these reasons, it is respectfully requested that this Court grant Class Counsel's fee application.

## IV.   This Court should award the requested service payments for Named Plaintiffs.

"The purpose of [service] payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws." *Bredbenner v. Liberty Travel, Inc.*, 2011 U.S. Dist. LEXIS 38663, 63-64 (D.N.J. Apr. 8, 2011). By bringing suit against a large company and having documents publicly filed with their names on them, named plaintiffs who assist in class action litigation "[take] on certain risks. By bringing suit against a major company[,]... they risk their good will and job security in the industry for the benefit of the class as a whole." *Id.*

The notice in this matter informed all class members that Named Plaintiffs were seeking service awards totaling $20,000 ($10,000 to Mr. Murray, and $5,000 to Mr. Littler and $5,000 to Mr. Zimmerman). Not a single objection was made to the service award applications.

Named Plaintiffs all assisted greatly in the litigation and resolution of this matter. Mr. Murray, the original plaintiff in this action, seeks a service award of $10,000. Mr. Murray's efforts cannot be overstated. Mr. Murray was the sole plaintiff in this matter from February 4, 2011 through June 17, 2011. During this time, he could have chosen to engage in settlement discussions which would likely have resulted in him personally receiving more total compensation than he will ultimately get in the class settlement, even with the inclusion of the service award. Of course, had he chosen to take such efforts, none of the other class members would have received a dime. In addition, he provided the ground work which led to the ultimate result, including providing witnesses, detailed information regarding Defendant's pay practices, donning and doffing practices, job duties, locations, and other information which was necessary to ultimately obtain the result provided. He was instrumental during settlement discussions, and participated in the mediation and settlement discussions by phone. He further reviewed Defendant's discovery responses and provided insight into weaknesses and alleged factual inaccuracies of same. The efforts he spent and the sacrifices he made were not shared by any other class member in this case. (Exhibit C at ¶7).

The other two named plaintiffs, Mr. Zimmerman and Mr. Little, seek service payment of $5,000. While not as instrumental to the class as Mr. Murray, their efforts were still important to obtaining the ultimate recovery. These two individuals provided a further expansive view of Defendants' policies, including providing further insight early in this case regarding Defendant's pay practices, donning and doffing practices, job duties, and locations. Additionally, they

assisted with discovery, reviewed Defendants' responses to discovery, and assisted in the settlement of this matter.  (Exhibit C at ¶8).

The service payments requested are in line with the amounts regularly provided in similar cases. *See, e.g., Bredbenner*, 2011 U.S. Dist. LEXIS 38663 at *68 ($10,000 each for 8 named plaintiffs); *Dewey*, 728 F. Supp.2d at 610 ($10,000); *In re Am. Inv. Life Ins. Co. Annuity Mktg. & Sales Practice Litig.*, 263 F.R.D. 226, 245 (E.D. Pa. 2009) (between $5,000 and $10,000); *In re Elec. Carbon*, 447 F. Supp. 2d 389, 412 (D. NJ. 2006) ($12,000); *In re Remeron End-Payor Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27011 at *32-*33 (D.N.J. Sept. 13, 2005) ($30,000); *see also 4 Newberg on Class Actions* § 11.38, at 11-80 (citing empirical study from 2006 that found average award per class representative to be $16,000).

For these reasons, the class has greatly benefited by the efforts of these individuals, and it is accordingly requested that the service payments as requested be awarded.

## CONCLUSION

For the reasons as stated above, Plaintiffs request that the Court give final approval to the settlement, and award the attorney's fees and service payments as requested.

Respectfully Submitted,

*/s/ Justin L. Swidler*
Justin L. Swidler, Esq.
Richard S. Swartz, Esq.
**SWARTZ SWIDLER, LLC**
1878 Marlton Pike East, Ste. 10
Cherry Hill, NJ 08003
Phone: (856) 685-7420
Fax: (856) 685-7417

Respectfully Submitted,

/s/ Justin L. Swidler
Justin L. Swidler, Esq.                              Gavin Appleby, Esq. (Admitted *Pro Hac*
Richard S. Swartz, Esq.                              *Vice*)
**SWARTZ SWIDLER, LLC**                              Holly E. Rich, Esq.
1878 Marlton Pike East, Ste. 10                      **LITTLER MENDELSON, LLC**
Cherry Hill, NJ 08003                                Three Parkway
                                                     1601 Cherry Street, Ste. 1400
Attorneys for Plaintiffs                             Philadelphia, PA 19102

                                                     Attorneys for Defendants