**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**TRENTON DIVISION**

| | |
|---|---|
| **CHARLES MURRAY, on behalf of himself and all others similarly situated,** | ) Docket No. 3:11-cv-00647-LHG<br>)<br>) Courtroom No. 7E<br>) Clarkson S. Fisher Building |
| **Plaintiffs,** | ) & U.S. Courthouse<br>) 402 East State Street |
| **versus** | ) Trenton, New Jersey 08608<br>) |
| **GERDAU AMERISTEEL CORP. and JOHN DOES 1-10,** | )<br>)<br>) |
| **Defendants.** | )<br>) May 3, 2013<br>) 2:26 P.M. |

```
  TRANSCRIPT OF HEARING ON [416] MOTION TO CERTIFY CLASS AND
               SETTLEMENT FILED BY PLAINTIFFS.
            BEFORE HONORABLE LOIS H. GOODMAN
             UNITED STATES MAGISTRATE JUDGE
```

APPEARANCES:

| | |
|---|---|
| For the Plaintiffs: | Swartz Swidler LLC<br>By:  JUSTIN SWIDLER, ESQ.<br>       RICHARD SWARTZ, ESQ.<br>1878 Marlton Pike East, Suite 10<br>Cherry Hill, New Jersey 08003 |
| For Defendants: | Littler Mendelson PC<br>By:  HOLLY RICH, ESQ.<br>1601 Cherry Street, Suite 1400<br>Philadelphia, Pennsylvania 19102<br><br>Littler Mendelson PC<br>By:  GAVIN APPLEBY, ESQ.<br>3344 Peachtree Road, N.E., Suite 1500<br>Atlanta, Georgia 30326 |
| ESR/Courtroom Deputy: | Ivannya Jimenez |

**TRANSCRIPTION SERVICE:    TRANSCRIPTS PLUS, INC.**
**435 Riverview Circle**
**New Hope, Pennsylvania 18938**
**Telephone: 215-862-1115**
**Facsimile: 215-862-6639**
**e-mail CourtTranscripts@aol.com**

```
Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.
```

1          <u>TRENTON, NEW JERSEY   MAY 3, 2013  2:26 P.M.</u>

2               (Call to order of the Court)

3          THE COURT:  Good afternoon.  We're here in the matter

4  of Murray versus Gerdau Ameristeel Corp., et al., Docket 11-

5  647.  Can I have the appearances, please?

6          MR. SWIDLER:  Justin Swidler and Richard Swartz of

7  Swartz Swidler for all the plaintiffs in this matter.

8          MR. APPLEBY:  And Gavin Appleby and Holly Rich for

9  the defendants from Littler.

10         THE COURT:  Thank you.  All right.  After many, many

11 months, we are here on the joint motion for preliminary

12 approval of the collective and class settlement and provisional

13 certification of the settlement class.  I say "many months"

14 because I know that you have spent many, many months working on

15 this.  I've participated, to some extent, at the tail end.  I

16 note that the parties have consented to my jurisdiction to

17 consider this motion.  And I am prepared to hear whatever

18 presentation you would like to make in support of the

19 application.

20         Who would like to speak?

21         MR. SWIDLER:  Your Honor, and we spent a lot of time

22 on the briefs and the exhibits attached thereto.  That's part

23 of the reason for the amended filings.  So, to be honest, if

24 Your Honor has any direct questions, I think we're both

25 prepared to answer them.  But I think our briefs and motion,

1  along with the attached exhibits, fairly inform the Court of

2  where we are and why we think this motion is appropriate.

3          THE COURT:  All right.

4          MR. APPLEBY:  I'll just add something.

5          THE COURT:  Mr. Appleby?

6          MR. APPLEBY:  Yes, and I think they are very

7  thorough.  We sort of threw you a dodge ball earlier this week.

8  We filed, and then we refiled.  There was actually a benefit to

9  that, and I know it probably messed you up in terms of your

10 time, and we apologize for that.  But we went through it very

11 thoroughly, I will say that.  And to give credit to Justin, in

12 particular, it really was a team effort.  I think we did a lot

13 of problem-solving together.  And at the end of the day, there

14 is virtually no disagreement on anything.

15         There is one thing that I do want to raise, but it's

16 a fairly tangential issue, and we can talk through these other

17 issues before I do that.  But I think it went as smoothly as it

18 could to try to get this thing finalized.  We have now seen the

19 formula with the allocation numbers in it;  I think everybody

20 is comfortable with those numbers.

21         There is one thing different that you may well have

22 noticed from when you sat down with us.  At the time when you

23 sat down with us, the agreement was that -- well, I guess it

24 wasn't an agreement, per se.  But I think the plan was that

25 people would be allocated under a formula, and it didn't matter

4

1   if you were a New Jersey non-opt-in or an opt-in.   That's now

2   changed, and I think Justin and I talked through it 40

3   different times, and it makes the most sense, given what we're

4   doing.   I think it's fair because the New Jersey folks do not

5   have a claim for liquidated damages.   That was really what the

6   analysis was.

7          You may remember, we broke the taxes down so

8   liquidated damages would be half of that.   That actually didn't

9   work legally when we really looked at what New Jersey was

10  about.   And it was that impetus that caused us to rethink that

11  issue.

12         But from a fairness standpoint, I don't see any

13  concerns with it because their claims truly are different.   The

14  Statute of Limitations are shorter, and they don't have a

15  potential complaint for liquidated damages.

16         So, just that background -- otherwise, we are

17  delighted to answer questions, but I will say it was a good

18  week for working through this stuff, both last week and this

19  week.

20         THE COURT:   All right.   I have some very basic

21  questions.   And some of it just goes to making sure the record

22  is clear.   The class, as I understand it, is workers who worked

23  in New Jersey for Gerdau.   And so the workers at other sites

24  are excluded, correct?

25         MR. SWIDLER:   Your Honor, the -- strictly from a Rule

1   23 analysis because we only filed under New Jersey State law,

2   the only employees who were part of that Rule 23 class are the

3   people who worked in Perth Amboy or Sayerville, which are both

4   New Jersey locations.  Nobody else will be part of the Rule 23

5   class.  They have claims exclusively under the Fair Labor

6   Standards Act and would be opt-in plaintiffs under 216(b) of

7   the law, the collective action part of the FLSA.

8           THE COURT:  Okay.

9           MR. APPLEBY:  You're probably aware of this, but we

10  have opt-ins from all over the country, but they're different

11  for the New Jersey class, I would agree with that.  That's a

12  little concerning, by the way, only with one respect from my

13  viewpoint, which is from a CAFA standpoint, we have a lot of

14  people to contact for better or for worse.

15          THE COURT:  Yes, well, just tell me how that works as

16  a practical matter, in terms of the New Jersey plaintiffs as

17  opposed to the opt-ins from other parts of the country.  I mean

18  I know this case has taken you all over the country.

19          MR. APPLEBY:  Correct.

20          THE COURT:  And is it that your travels outside of

21  New Jersey have been related only to what are now going to be

22  the opt-ins?  And I ask this, not just to create a record, but

23  also because I have not been involved on this day-to-day level

24  that you have and I just want to make sure that I understand

25  where and how the class is defined.

1           MR. SWIDLER:  So, Your Honor, the class would be

2  defined as, again, under Rule 23(b) in New Jersey and the opt-

3  ins, including the New Jersey people but being from anywhere in

4  the United States.

5           As far as the question you had about well, we travel,

6  which part of the case does it go to?  Every time we travel,

7  it's for the entire case.  I mean every piece of evidence helps

8  us build a case.  Had this gone to trial, it would help us

9  build willfulness, it would help us show whether these

10 practices existed.

11          So, I don't think it would be correct to say that our

12 travels when we -- first when we go to Atlanta and visit Hunter

13 Hughes who said, "Yeah, I'll settle the whole thing."  That has

14 to do with New Jersey, too.

15          And likewise, you know, when we went to North

16 Carolina, you know, and we met with people and we understood

17 the policies there, it helped us build -- if this went to

18 trial, it would have helped us build a willfulness argument.

19          So, every time we traveled, it helped us with the

20 entire case.  It gave us new insight into how does Gerdau

21 operate, how this policy is implemented by management, how --

22 does it come from Tampa, which, you know, we presume it does

23 because it appears to be extremely centralized no matter where

24 you go.  And so I -- and Gerdau may disagree with me on the

25 factual contentions, I don't want to turn this into a trial,

1   we're here for settlement.  But the point is that we were

2   learning information that helped us further everybody's case,

3   not just the opt-ins.

4           THE COURT:  All right.  And there is one plant that

5   is specifically excluded.

6           MR. SWIDLER:  Your Honor, that's a good point.  So,

7   the Jackson, Michigan plant -- we went to Michigan, you know,

8   we got a number of opt-ins from Michigan.  And you'll notice

9   that we don't even mention that we traveled to Michigan in our

10  brief.  And the reason is for those claims, it really wouldn't

11  have benefitted everybody.  It turned out, unbeknownst to us at

12  the time, those people worked for Gerdau MACSTEEL, and we

13  thought that was really more of a name only.  We've since

14  learned they have a separate human resources department.  And

15  while their practices may be somewhat similar -- and, again, I

16  don't want to turn this into a trial, Gerdau may disagree with

17  that.  But regardless of whether their practices or similar or

18  not, they didn't come from the same location.  They weren't

19  part of the same policy or practice that we're suing over here.

20  So, it made sense that they would bring a separate claim, which

21  they are bringing in Michigan.

22          So, those individuals are not waiving any rights.

23  There's an agreement amongst counsel, we have that -- and it's

24  actually in the documents; I withdrew them from this case.  But

25  their Statute of Limitations is tolled, it's been tolled since

1  they filed in this case.  They will refile in Michigan without

2  losing any of their rights under the law.  The only thing

3  they're not doing is they're not going to be part of the

4  settlement, but they're also able to continue litigation

5  against Gerdau.  So, they're not waiving any rights and they're

6  not getting any consideration.

7          MR. APPLEBY:  I was just going to add, structurally

8  it's a separate company.  There is co-ownership, but only when

9  you get to Brazil.  So, from a U.S. standpoint, they are really

10 different entities, which is what they didn't realize when they

11 visited and made a number of opt-ins at that point.

12         But I agree with everything else Justin has said:

13 That we are -- we've got that now covered in Michigan.  The

14 withdrawals from here will be immediately filed there, and I

15 think we've all agreed on how to process that.

16         THE COURT:  All right.  Give me one second.

17         MR. APPLEBY:  Just let me add one thing, if you don't

18 mind, Your Honor, to your prior question.  To describe Gerdau

19 just for a minute for the record:  This case focuses on its

20 steel mills.  There are something like 16 of those that are at

21 issue in this case in one fashion or another; I'm not sure if

22 all 16 are.  But there are some difference in terms of how they

23 do things.

24         Having said all that, for purposes of settlement, we

25 certainly think there's enough commonality.  I don't want to go

1  too far down that path in case it all falls apart because there
2  are differences, for sure.  But for a settlement perspective,
3  Gerdau decided the better process was to try to go through this
4  settlement.  And there's certainly a lot of opt-ins from a lot
5  of the different locations.
6          THE COURT:  All right.  I have a couple of questions
7  with regard to the notice.  Do we know yet who the claims
8  administrator will be?
9          MR. APPLEBY:  We do not.  We have calls outstanding.
10 We certainly have relationships with some good ones and we're
11 going to try to ask two of them to bid against each other, but
12 we should have that fairly soon.
13         THE COURT:  And it's my understanding that the claims
14 administrator's fees will be paid by defendant.
15         MR. APPLEBY:  Correct.
16         THE COURT:  Now will the amount of each class member
17 be in their notice?  I note on Page 4 that there's a blank that
18 says --
19         MR. SWIDLER:  Your --
20         THE COURT:  -- "You will receive a gross amount no
21 less than" blank.
22         MR. SWIDLER:  That's correct, Your Honor.  We know
23 it's unusual, but we've already had the allocations.  We
24 thought it was fair to tell the people what we know.  We have
25 -- we know we're going to get flooded with calls if we don't,

1  and people want to make this decision based on what they're

2  getting.

3         So, the number is subject to change, but it would

4  only go up.  You know, people opt-out and the total pool gets

5  slightly bigger, and -- well, not bigger, but less heads to

6  feed, so to speak.  So, the number that would be on the notice

7  is the least amount a class member.  It's likely it would be a

8  few dollars higher, but it would be very, very close to what

9  they get.

10         THE COURT:  I thought that was very ambitious, but a

11  good idea, if possible, because the formula might be a little

12  difficult for most people to figure out.

13                        (Laughter)

14         MR. SWIDLER:  Your Honor, the fact is I spent -- over

15  the last three weeks, we hired a computer consultant, and I

16  spent a lot of time with Mr. Appleby and Ms. Rich on the phone.

17  We have gone through this.  We have the allocations, and we

18  submitted a chart to Your Honor.  It's not made up, those are

19  the real allocations.  Obviously we just want to double-check

20  the data now, but we think we have it, and this is what the

21  payoffs will be based on the data unless -- what I mean is we

22  should know it.  So, we didn't come here not knowing what the

23  allegations were.  We knew what we needed for people to say,

24  "Yes."  We knew, you know, so everything was sort of based on

25  we "have to figure out these allocations."

1          THE COURT:  Well, I'm very impressed with the work

2     that you've done on this.  I know how much you've done to make

3     this work.

4          Now one thing I did not see on the notice is an

5     advisory that objecting parties can appear at the fairness

6     hearing.  I know that it says, "If you wish to present your

7     objection at the fairness hearing, you must state your

8     intention to do so."  But would it typically not say that you

9     can appear in person at the fairness hearing?

10         MR. SWIDLER:  Your Honor, it should, we meant to, and

11    we'll amend it.

12         THE COURT:  Okay.  Great.

13         MR. SWIDLER:   I assume so.

14         MR. APPLEBY:  I don't have a problem with that, yeah.

15         THE COURT:  Just to have all possibilities covered.

16    If someone wants to be here, they have every right to be here,

17    and they should be aware of that.

18         MR. APPLEBY:  Sure.  That's fine.

19         MR. SWIDLER:  It says you're not obligated to attend.

20    And I think before we told them -- I think what happened, just

21    to give Your Honor some background, is we had said you could

22    attend, and I think defense counsel correctly realized that

23    they should be notified, even if they don't intend to

24    participate.  So, I think they changed my language to make it

25    sure that people like in California know they can still

1  participate.  But in so doing, that way language must have been
2  inadvertently removed.  We'll add it back.
3        THE COURT:  Well, I think they should know that they
4  can object.
5        MR. SWIDLER:  Yes.
6        THE COURT:  They can appear.  But they cannot appear
7  and object unless they've already submitted their objection.
8        MR. APPLEBY:  Correct.
9        MR. SWIDLER:  Absolutely.
10        MR. APPLEBY:  That's correct.
11        THE COURT:  So, as long as that's clarified, I don't
12  have a problem.
13        Anything that anyone wants to add?
14        MR. APPLEBY:  You asked a minute ago about the
15  process, and I don't -- you may already know all these things
16  about the CAFA issues, but just to bring that to light.  We are
17  -- we created the CAFA forms, we're going to send those out.
18  We have a specific time we have to do that related to what
19  we're doing here today.  Your Honor probably knows this, but
20  literally that's 100-day time period under the law.  And that
21  obviously affects when we can have our final, but it's
22  basically 90 plus 10 in terms of how it operates.  We're
23  prepared on those issues.  We have got everything basically
24  ready at this point.  They will go out by May 8, but I'd prefer
25  not to hit like 101 day.  If we can get a little time in there,

1   that would be smart.

2          THE COURT:  All right.  Well, what I would like to do

3   is read into the record my findings, and then we can turn to

4   some scheduling.

5          MR. APPLEBY:  That's fine.

6          THE COURT:  And we can set a date for the fairness

7   hearing.  You can fill in the dates that need to be filled in

8   in the order.

9          MR. SWIDLER:  That would be helpful.  Thank you.

10         THE COURT:  All right.  And, in fact, let me just

11  pull out the order here.

12                          (Pause)

13         THE COURT:  Do I have the order here?  I have the

14  memorandum.  I have the notice.  And I have the settlement

15  agreement.

16         MS. RICH:  Would you like a copy, Your Honor?

17         MR. APPLEBY:  You should have gotten a proposed

18  order, but we have an extra copy if you want it.

19         THE COURT:  If you would hand one up, that would be

20  great.

21         MR. APPLEBY:  Sure.  No problem.

22         THE COURT:  Thank you.   All right.

23         Presently before the Court is a motion filed jointly

24  by the parties for preliminary approval of collective and class

25  settlement and provisional certification of the settlement

1    class in the matter Murray versus Gerdau Ameristeel Corp., 11-
2    647.
3                MR. APPLEBY:  Your Honor, could I -- I don't mean --
4    I'm sorry to interrupt.  We should actually say this on the
5    record.  I think Justin and Rich know this at this point, but
6    that has been a mistake from day one, and we've corrected that
7    in pleadings.  So --
8                THE COURT:  Do I have the wrong caption here?
9                MR. SWIDLER:  No, Your Honor.
10               MR. APPLEBY:  Well, you have the correction caption,
11   what you don't have is the correct defendant.  And I think we
12   got -- at least I think I made those changes, Justin, and put
13   that in the last couple of documents.  But the technical name,
14   just for the record, is Gerdau Ameristeel U.S., Inc., that is
15   the employing company.  It's a subcompany of the one that's on
16   the caption, but the one on the caption is the Canadian
17   company.  So, just for the record.
18               THE COURT:  All right.  What I was referring to was
19   the caption --
20               MR. APPLEBY:  Correct.
21               THE COURT:  -- and not the party.
22               MR. APPLEBY:  Correct.
23               THE COURT:  So, I think we're all right as far as
24   that goes.
25                   Now there are two things that the Court needs to

1   attend to, and one is approval of the settlement class and the

2   other is preliminary approval of the settlement.

3           The Court will consider the request for a conditional

4   certification of the class first.  And then deal with the

5   motion for preliminary approval of the settlement itself.  Then

6   the Court will consider the proposed notice to be sent to class

7   members.

8           First we address the class certification issue.  And

9   the Court notes that the definition of the proposed class

10  includes all persons who worked on an hourly basis for Gerdau

11  in New Jersey and performed manufacturing work during at least

12  one work week since February 4, 2009.  And I believe that is

13  through present, is it not?

14          MR. SWIDLER:  Yes, Your Honor.

15          THE COURT:  All right.  Thank you.

16          All right.  For purposes of the provisional class

17  certification, we look at -- first we look at numerosity under

18  the Rule 23(a) factors.

19          In this case, there are more than 300 individuals who

20  worked for Gerdau in New Jersey, and who would appropriately

21  fit within the class as defined.  The Court finds that this

22  meets the requirement for numerosity.

23          Next we look at commonality.  The putative settlement

24  class consists entirely of steelworkers who worked for Gerdau

25  in New Jersey.  While there are also opt-in members that we've

1  been talking about, and while Mr. Appleby has clarified that

2  the members are not, in fact, common for all issues, certainly

3  for purposes of this current motion, they have significant

4  issues sufficient that the Court is satisfied that commonality

5  is established.

6        We look at the typicality of the named plaintiffs and

7  they certainly appear to personify the claims that are being

8  made with regard to not being compensated for donning, doffing,

9  walking and waiting time, and for the other allegations that

10 are the subject of the class.  And the Court finds that

11 typicality has been met.

12       Similarly with regard to adequacy of counsel and

13 adequacy of representation, the Court has reviewed the

14 submissions of counsel and finds that plaintiffs' counsel has

15 substantial experience litigating wage and hour actions,

16 including class actions and certified collective actions.  And

17 the Court finds no problem with the adequacy of counsel and

18 their ability to represent the plaintiffs in this case.

19       With regard to the adequacy of representation,

20 there's no indication of any conflict with regard to the

21 plaintiffs and, therefore, the Court finds that adequacy of

22 representation and counsel has been met.

23       With regard to the Rule 23(b)(3) factors, the Court

24 finds that questions of law and fact will, indeed, predominate

25 in this matter.  The claims arise from the same policies that

1   were in force with regard to all of the Gerdau workers that

2   would be members of this settlement class with regard to their

3   equipment, their compensation.  And as a result, the Court

4   finds that questions of law and fact will predominate.

5         The additional 23(b)(3) factors support approval of

6   the class, as well.  It's been represented to the Court that

7   more than half of the class members have already consented to

8   being members of this class.  This supports a finding that the

9   individual class members do not have a strong interest in

10   pursuing these claims individually.  There is a clear interest

11   in controlling litigation and resolving it in a single forum to

12   the extent possible to avoid multiple litigations, to avoid the

13   risk of different and inconsistent outcomes, and for other

14   reasons of judicial economy.

15         The Court, therefore, finds that resolving this

16   matter by way of class action is the superior means of

17   proceeding.  And, accordingly, will grant provisional

18   certification of the settlement class.

19         Now we turn to the settlement itself.  The Court has

20   reviewed the various submissions, including the settlement

21   agreement, the joint memorandum of law submitted by the

22   parties, the declaration of counsel, Justin Swidler, the

23   proposed order preliminarily approving the settlement, and the

24   proposed notice to class members.

25         At the outset, the Court notes the overriding public

18

1  interest in settling class actions.  The Court has reviewed the

2  factors that have been outlined in various cases with regard to

3  approval of class settlement, including the factors set out in

4  Gersh v. Jepson.

5        Based upon the Court's review of those factors and

6  the submissions of the parties, it is clear to the Court that

7  the settlement is the product of serious, informed, and

8  nonconclusive negotiations.  That those negotiations have taken

9  part following significant discovery in exchange of written

10 materials.  The Court finds that there are no obvious

11 deficiencies in the proposed settlement.  That the proposed

12 settlement does not improperly grant preferential treatment to

13 the class representatives or to any particular segment of the

14 class.

15       The Court further finds that the proposed settlement

16 falls within the range of possible approval and appears to be

17 the result of arm's length negotiations.  Indeed, those arm's

18 length negotiations have taken part over the course of many

19 months and the Court has, in fact, overseen much of that

20 process.

21       The settlement seems to have been negotiated through

22 attorneys with substantial experience in these types of

23 matters.  And counsel has represented that the named plaintiffs

24 agree with the settlement and that other members of the class

25 have, in fact, voiced their support of the settlement.

1          The Court notes that this is a particularly complex

2    case.  That discovery has taken counsel over a good part of the

3    country.  That this case will only get more expensive and more

4    complex if it continues.

5          In addition, there are no guarantees in any case.

6    There are always the risks that one party or another will

7    prevail or not prevail and will be, at the end of the day,

8    still forced to incur the expenses of the litigation.

9          Based upon all of those factors, the Court finds that

10   this settlement is, in fact, a fair and appropriate resolution

11   of this matter.  The Court is prepared to sign the order

12   preliminarily approving the settlement.

13         The Court has also reviewed the notice, the proposed

14   notice to the class members.  I had some questions, counsel

15   have answered those questions to my satisfaction.

16         It is clear from this proposed notice that it uses

17   clear and understandable language, the formula notwithstanding,

18   but there are certain things that no one can overcome.  I think

19   that the fact that counsel have made the effort, which I think

20   is an enormous thing to have done, to calculate the amount and

21   give the class members an idea of what the formula means in

22   terms of each of them is a tremendous benefit.  And I

23   congratulate you for having undertaken that.

24         The notice advises the class members what they can

25   do, that they can object, that they can appear.  Let me ask

1  you, does the notice advise them that they can retain counsel

2  if they choose?  That's something that's often here, and I

3  don't believe I saw that.

4          MR. SWIDLER:  Your Honor, to the extent it doesn't,

5  we'll add it.

6          THE COURT:  Thank you.  All right.

7          MR. SWIDLER:  It may not.  Rather than hold up the

8  Court, if it doesn't, we'll add it.

9          THE COURT:  Fine.  Fine.  And --

10         MR. SWIDLER:  Assuming, again --

11         MR. APPLEBY:  No objection.

12         THE COURT:  All right.  The Court finds that the

13  proposed notice is fair and adequate.  The Court has made a

14  preliminary evaluation of the fairness of the settlement and

15  hereby grants preliminary approval as this settlement appears

16  to be in the range of possible approval and the proposed class

17  notice meets the requirements of Rule 23.

18         The Court further directs that the notice be given to

19  the settlement class in the form submitted as revised pursuant

20  to our conversation today and in accordance with the schedule

21  that's been presented to the Court with regard to submission to

22  the claims administrator.

23         I believe the next thing we need to do is address

24  some dates.  You had asked for a fairness hearing in August, is

25  that still appropriate?

1          MR. APPLEBY:  It's appropriate if it's near the end.

2     I think we put an August 17th date as the minima.

3          MR. SWIDLER:  Gavin, just so you know, the minimum

4     would have been, I think, August 8.

5          MS. RICH:  August --

6          MR. SWARTZ:  Figure out what 100 days --

7          MR. APPLEBY:  Yeah, August 7th, I think, yeah.

8          MS. RICH:  It's 100 days from April 29th --

9          MR. SWIDLER:  Okay.  So, just -- just so you know,

10    August 17 is not the 100th day.  We already built I somewhat of

11    a buffer.

12         MR. APPLEBY:  Right.

13         MR. SWIDLER:  Okay.

14         MR. APPLEBY:  Yeah.  I mean just in the event there's

15    a slip up, I would really hate to mess things up by a day or

16    two.  So, my preference would be sometime after August 17th,

17    even the beginning of September wouldn't be bad.

18         THE COURT:  Is there a day of the week that's better

19    for everyone?

20         MR. APPLEBY:  Not necessarily.

21         THE COURT:  Since you folks are traveling, I don't

22    know if it's easier for you to travel on weekends or midweek.

23         MR. APPLEBY:  In my perfect world, which Your Honor

24    should not be too worried about, but my perfect world, Tuesday,

25    Wednesday, or Thursday would be preferable.  That's hardly a

1  demand, Your Honor.

2           THE COURT:  And I don't take that as a demand.  But

3  given that August is pretty clear right now, there's no reason

4  why I can't accommodate you, Mr. Appleby.  Would August 28

5  work?  It's a Wednesday.

6           MR. SWIDLER:  That's fine.

7           THE COURT:  Give you a little bit of a buffer.  And,

8  folks, if there's a problem, you'll let me know and I'll work

9  with you if we need to move it.

10           MR. APPLEBY:  That is fine with defendant, Your

11  Honor.

12           (Attorneys engaged in off-the-record colloquy)

13           THE COURT:  August 22?

14           MR. SWIDLER:  Yes.

15           MR. APPLEBY:  Yeah.

16           MR. SWIDLER:  You have good ears, Your Honor.

17                          (Laughter)

18           THE COURT:  Well, I was looking at it because that's

19  the earliest proceeding, Tuesday, Wednesday, Thursday.  10

20  o'clock?

21           MR. APPLEBY:  That's fine, Your Honor.

22           MR. SWIDLER:  That's fine, Your Honor.  The 22nd --

23           THE COURT:  All right.  10 A.M., August 22 for the

24  fairness hearing.  If you encounter a problem, let me know.  If

25  there are objections, obviously you'll let me know before then.

1            Now I don't think that anything we've done changes

2 the order, am I correct?

3            MR. SWIDLER:  That's correct, Your Honor.

4            MR. APPLEBY:  That is correct.

5            THE COURT:  So, I'll enter the order.  But you know

6 what the dates are, and if you want to wait, you can get a copy

7 of it now.  It just won't be docketed -- it probably won't hit

8 the docket until Monday.

9            MR. SWIDLER:  Your Honor, just to be sure that I

10 know, the two amendments to the notice:

11           One would be that you have the right to obtain other

12 counsel;

13           And the other is you have a right to be at this

14 hearing.

15           THE COURT:  Correct.

16           MR. SWIDLER:  Okay.  Great.  Thank you.

17           THE COURT:  All right.  Anything else we need to

18 address?

19           MR. SWIDLER:  Not from the plaintiffs, Your Honor.

20           MR. APPLEBY:  I think that covers it, Your Honor.

21 Thank you.

22           THE COURT:  Well, thank you, all, very much.  And I

23 have to say, again, I really -- I commend you all.  This could

24 have been a very protracted litigation, I thought coming to

25 that.  And you all really made such an effort to work this

24

1  through.  There were hiccups in the settlement, and I think you

2  all really worked very hard to bring it together.  And I have

3  to commend you.  This was not an easy one, and you did a great

4  job.

5          MR. APPLEBY:  Thank you.

6          THE COURT:  So, thank you, all.

7          MR. SWIDLER:  Thank you, Your Honor.

8          MS. RICH:  Thank you, Your Honor.

9          THE COURT:  All right.  Do you want to wait for the

10  order or wait until it hits the dockets?

11          MR. APPLEBY:  I don't -- if the order is as simple as

12  I think it's going to be, I don't have a problem waiting.

13          THE COURT:  All right.

14          MR. APPLEBY:  And Monday's fine when we see it pop

15  up.  I just want to make sure that Gerdau, among other people,

16  is ready for it to pop up because it may get some press.

17          THE COURT:  All right.  It will be on the docket

18  Monday.

19          MR. APPLEBY:  Okay.

20          THE COURT:  All right.  Thank you, all, very much.

21      (Whereupon, at 2:59 P.M., the hearing was adjourned.)

22

23

24

25

1

2

3                    <u>CERTIFICATE OF TRANSCRIBER</u>

4

5        I, KAREN HARTMANN, a certified Electronic Court

6  Transcriber, certify that the foregoing is a correct transcript

7  from the electronic sound recording of the proceedings in the

8  above-entitled matter.

9

10

11   _/s/ _Karen Hartmann____ AAERT CET**D0475 Date: July 30, 2013

12  TRANSCRIPTS PLUS, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25